CHARLES E. BRESLER v. EDWARD H. BUTLER, STATE TREASURER.

*Mandamus—When may issue to State officer—Disputed claim against the State—Suit will not lie to enforce it—Nor mandamus against State treasurer—Government stock bank—Liability of.*

1. No mandamus can issue to a state officer to compel him to perform any but some unquestionable and legally defined duty.

2. A right, under statute, to have the state treasurer pay some definite amount may be enforced by mandamus; but where the liability of the state is not recognized *by* the state, no suit will lie to determine it, and what cannot be done against the state *directly* cannot be done under color of suing a state officer.

3. The State of Michigan never became responsible to make good the failure of the government Stock Bank to pay its debts. The only responsibility it assumed, was to receive and apply the bonds deposited to pay bills certified by the treasurer, as far as they would go toward satisfying them, the balance being a personal debt against the bank stockholders.

Mandamus. Submitted February 2, 1886. Denied February 10, 1886.

The facts are stated in the opinion.

*Alfred Russell*, for relator:

The state is liable the same as any other corporation, or as an individual would be in a commercial transaction, for the negligence of its agents, engaged in authorized business: *Cooke v. U. S.*, 91 U. S. 389, 398; *Orleans v. Platt*, 99 U. S. 676, 682; *U. S. v. Bank of Metropolis*, 15 Pet. 377. The notes held by relator recite on their face, over the signature of the state treasurer, that they are secured by the pledge of government stock, and the state, as a corporation, *is estopped to deny the truth of the recital*, as against an innocent holder: *Orleans v. Platt*, above cited; *Royal British Bank v. Furquand*, 6 El. & Bl., 325; *Com'rs Knox Co. v. Aspinwall*, 21 How. 539; *Moran et al v. Commissioners Miami Co.*, 2 Black. (U. S.), 722; *San Antonio v. Mehaffy*, 96 U. S. 312; *Mercer Co. v. Hacket*, 1 Wall. 83; *Merchant's Bank v. State Bank*, 10 Wall. 604. The last case is cited and approved in *New York Iron Mine v. Negaunee Bank*, 39 Mich. 653. It has been uniformly held that when the fact of certification was within the terms of the statute, authorizing the officers to act, the bona fide holder has a right to presume the *lawful exercise* of the power, and is not bound to look beyond the question of the *existence of the power in the officer*. Wherever one of two innocent persons must suffer by the act of a third, the loss shall be borne by that one whose behavior in the matter denoted to the other that such third person's doings were worthy of "trust according to their outward seeming": *Peake v. Thomas*, 39 Mich. 589; *N. Y. Iron Mine v. Negaunee Bank*, 39 Mich. 653. So, where no goods were delivered as stated in a bill of lading, the special owner is estopped in favor of a bona fide holder of the bill of lading from proving that no property was shipped: *Schooner Freeman v. Buckingham*, 18 How. 182. It is not competent for the state treasurer to allege that he has not in his hands government stocks pledged to secure relator's notes, and the case is stronger than if individuals were concerned, because the officer is the state, and in this case is to be treated, not as the agent of a corporation, to wit, the state, but as the corporation itself: *N. Y. & N. H. R. R. Co. v. Schuyler*, 34 N. Y. 30; *Pollard v. Vinton*, 105 U. S. 7–12.

CAMPBELL, C. J. The purpose of this application is to obtain payment of a balance claimed to be due relator as holder of bills of the Government Stock Bank. The charter of that bank was adopted in 1849, and amended in 1850.

Under the amended act, the bank was allowed to deposit government stocks with the state treasurer, and to have bills issued to the value of the stocks, countersigned by the state treasurer. New bills could be issued on the return of old ones to the treasurer. It appears from the public documents to which relator refers that the amount of bills lawfully outstanding at any one time did not exceed a little over $100,000.

During the year 1854 the stocks had been reduced by redemption and return of bills to between $30,000 and $40,-000. The bank not paying its bills on demand, proceedings were had in 1855 to sell the stocks, and notice was given to billholders to present their bills for redemption within a time specified. In answer to this call, relator, on March 12, 1855, presented and had proved before the treasurer $1,384.75, and received a certificate to that effect. Upon the coming in of the bills it was discovered that, by some means or other, there was in circulation an amount of between $50,000 and $60,000 beyond what there should have been, so that the proceeds of the stocks only paid forty per cent. of the face of the bills. No judicial determination ever ascertained just how this happened, but it was practically established that the excess was caused by stealing from the treasury vault—but when, or how often, or by whom, was not known—bills which had been returned and redeemed either by re-issues or by surrender of bonds. Relator has received his dividend of forty per cent. He now has demanded the balance from the state treasurer, who has no funds applicable to that purpose, and refuses to pay. This refusal is the occasion of the present application for a mandamus.

It is extraordinary for a claimant to wait over thirty years before urging his demands, and we doubt very much whether any court would be justified in considering so stale a claim, unless where the public officers had been kept in condition to respond to it. But the ground on which relator plants himself would preclude judicial action entirely.

No mandamus can issue to a state officer to compel him to perform any but some unquestionable and legally defined

duty. Where a party has a right under statute to have the state treasurer pay him some definite amount, a mandamus may lie to require it. But where the liability of the State is not recognized by the State, no suit will lie to determine it, and what cannot be done against the State directly cannot be done under color of suing a state officer : *Michigan State Bank v. Hastings*, 1 Doug. 226 ; *Michigan State Bank v. Hammond*, Id. 527 ; *Ambler v. Auditor General*, 38 Mich. 746 ; *People ex rel. Chas. N. Ayers v. State Auditors*, 42 Mich. 427. If such a claim as is now set up is not a definite and direct obligation which the State has not only assumed but authorized some one to pay, no judicial interference by mandamus or otherwise would be lawful.

The State never became responsible to make good the failure of the bank to pay its debts. The only responsibility it assumed was to receive and apply the bonds deposited to pay bills certified by the treasurer, as far as they would go towards satisfying them ; the balance being a personal debt against the bank stockholders, concerning whose solvency we know nothing, but whose liability has become outlawed by five full periods of limitation. There is no allegation and no reason to believe that any bills were ever issued by the treasurer in excess of the securities. The claim can only rest on the idea that the State is liable as an insurer against thefts from its treasury vaults, or that it is liable for the possible negligence of some of the treasury officials in not guarding their documents and vouchers, and stands like a private bailee who is supposed to have been negligent enough to be responsible. The facts, so far as laid before us, indicate that the vault was robbed, as far as they indicate anything.

We do not propose, on this motion, to consider whether such liabilities are recognized by governments at all, or, if so, under what circumstances. No private person or corporation could be sued after such a lapse of time, and it is not presumable that testimony now exists which could explain all the facts, so as to lead to a safe judgment upon them. We certainly cannot intermeddle, and, even if we thought the claim reasonable, we should decline the request to make any

suggestion to the board of auditors. We cannot undertake to say or to deny that they have authority to consider it. Relator must determine for himself whether he will seek their action.

The mandamus is denied.

The other Justices concurred.