PEOPLE EX REL. SCHUYLER W. AMBLER, TREAS'R OF GRATIOT COUNTY v. AUDITOR GENERAL.

*Mandamus to executive departments—Recovery of money from the State.*

Mandamus does not lie to compel the Auditor General to pay over to a county moneys which have been withheld from it in the annual settlements, under a mutual mistake of law and by authority of Comp. L., § 1090, by which the counties were charged with deficiencies on re-sales of State tax bids.

The action of the head of an executive department of the State is not judicial and therefore not subject to direct proceedings for review.

Whether mandamus lies to interfere with the action of the Auditor
General on matters of a purely public and executive nature,
where it is not purely mechanical, but involves the exercise of
mixed functions—Q.

Where money has gone into the State treasury as part of a general
balance rightfully received, and not as a separate and indepen-
dent item wrongfully received, mandamus will not lie to require
its repayment, nor can any suit be maintained for it unless vol-
untarily allowed within the authority of some proper officer.

When a State sues, it is limited in its recovery by any defenses
that might be set up against individual plaintiffs.

A State cannot be sued in its own courts without its own consent;
nor can any suit that is really against the State be maintained
against a State officer.

Executive discretion cannot be judicially reviewed; and where the
action of any officer to whom the State confides the auditing of
claims against it, is anything but ministerial, it cannot be
reviewed.

The Supreme Court exercises no control over the Board of State
Auditors in their disposition of claims against the State, not
provided for by general law.

Costs are denied on refusal of a writ of mandamus where the ques-
tion is new and its settlement important for the general interests.

MANDAMUS. Submitted April 17. Decided June 4.

Cowles & Cahill and S. F. Seager for relator. A mu-
nicipal corporation can always recover back money ille-
gally paid out by any of its officers, Trumbell v. Camp-
bell, 3 Gilm., 502; Petersburg v. Mappin, 14 Ill., 193; U.
S. v. Todd, 13 How., 52; Att'y Gen'l v. Moliter, 26 Mich.,
444; a board of supervisors cannot bind the county by
the allowance of an unlawful claim, Barry County v.
Manistee County, 33 Mich., 497; Kennedy v. Gies, 25
Mich., 83; Kewaunee County v. Knipfer, 37 Wis., 496;
Brady v. New York, 2 Bosw., 173; McSpedon v. New
York, 20 How. Pr., 395; Wolcott v. Lawrence, 26 Mo.,
272; Peterson v. Mayor, 17 N. Y., 449; People v. Flagg,
id., 584; People v. Chamberlain, 6 Hill, 244; Supervisors
v. Schenck, 5 Wall., 772; Warren County Soc'y v. Barr,
55 Ind., 30; Rothrock v. Carr, id., 334; Cumberland
County v. Edwards, 76 Ill., 544; Supervisors v. Van Clief,

1 Hun, 454; *Supervisors v. Ellis*, 59 N. Y., 620; *Linden v. Case*, 46 Cal., 171; *Phelan v. San Francisco*, 16 Cal., 531.

Attorney General *Otto Kirchner* for the respondent. ·

CAMPBELL, C. J.   This is an application for a mandamus to compel the Auditor General to pay over to Gratiot county certain moneys claimed to have been unlawfully charged to the county, and deducted from the amounts paid over on annual settlements.   These moneys now demanded are made up of charges for deficiencies on re-sales of State tax bids, under the statute of 1869, which was supposed to have made counties responsible for all losses on sales of State tax lands held for more than five years.   The statute was in the case of the *Auditor General v. The Supervisors of Monroe*, 36 Mich., 70, held insufficient to authorize such charges.

It appears from the application and return before us that of the sums of which restitution is now sought, $593.23 was charged over November 30, 1869; $305.58, November 30, 1870; $225.72, November 30, 1871; $118.24, November 30, 1872; $60.71, November 30, 1873; and $14.39 June 30, 1874.

It further appears that every year from October, 1869, to November, 1875, a cash balance varying in different years from a little over $3000 to more than $9000 a year was paid over by the State to the county, and that in each of those payments the amount was arrived at under the statute which directs the Auditor General to state the accounts between the State and county. The amounts claimed to have been unlawfully retained were all set forth in these statements, and the whole properly made known to the county authorities, who never complained and never sought a correction of the statements until recently, and who from year to year levied State taxes upon the basis of the auditor's apportionments, without asserting any claim to diminution.

In the Monroe county case the State was the complaining party, and we declined to interfere by mandamus to compel the county to raise money for charges that we held to be without sanction of law.

But the case before us is very different. This is substantially a proceeding to recover back from the State money paid into the Treasury and held there originally under a mutual mistake of law, both parties acquiescing, and both being under the same misapprehension. And furthermore the payment was in pursuance of an adjustment of accounts by the head of an Executive Department of the State whose action is not judicial and is not therefore subject to any direct proceedings for review in this court or elsewhere. *Auditor General v. Pullman Palace Car Co.*, 34 Mich., 59.

It would be a matter worthy of very serious consideration whether a mandamus can be regarded as an admissible remedy to interfere with matters of a purely public and executive nature, where the Auditor's action is not purely mechanical, but involves the exercise of mixed functions. The only cases in which the writ has issued from this court hitherto against that functionary are cases of strict right where his action was plainly unlawful, or where there was some duty involved to do or not to do the act in dispute. In most instances affecting private or corporate rights no discretion could lawfully be given which would interfere with private remedies. And in a large class of his duties the statutes are specific enough to relieve the controversies which may arise from any conflict of jurisdiction. Cases of this kind are found in *People ex rel. St. Mary's Falls Ship Canal Co. v. Aud. Gen.*, 7 Mich., 86, where the State had contracted to remit taxes on canal lands; *People ex rel. Throop v. Aud. Gen.*, 9 Mich., 134, where military bounty lands were held exempt; *People ex rel. Houghton County v. Auditor Genl.*, 9 Mich., 141, where specific taxes were payable to the county; *Michigan Southern & N. I. R. R. Co. v. Aud. Gen.*, 9 Mich., 448,

which was an injunction bill to restrain levying specific taxes; *Smith v. Aud. Gen.*, 20 Mich., 398, also an injunction bill; *Jackson Mining Co. v. Aud. Gen.*, 32 Mich., 488, also a proceeding to prevent the collection of an unlawful specific tax.

While there is no doubt some difficulty in drawing with precision any exact line of jurisdiction, we think it very clear that where money has gone into the State treasury, not as a separate and independent item wrongfully received, but as part of a general balance rightfully received, the recovery of it from the State, if not voluntarily allowed within the authority of some proper officer, must fall within the same rules that would apply to any other pecuniary demands against the State. If this money had been found in a city or county treasury among the book balances or other charges or credits, or if it had been retained by an individual upon an error in stating accounts, it could not be distinguished from other causes of action usually prosecuted in a suit for money had and received. It is simply so much money kept back out of the collections made by the State for the benefit of the county. If the State could be sued, it would certainly not be a proper case for mandamus. The fact that actions will not lie against the State does not change the nature of the claim, or make it anything but a State debt. The doctrine is well settled that where a State sues it is limited in its recovery by any defenses which might be set up against individual plaintiffs. *Michigan State Bank v. Hastings*, 1 Doug. (Mich.), 225; *Michigan State Bank v. Hammond*, Id., 527. But no State can be sued without its own consent, in its own courts, and a suit cannot be maintained against any body, which is really and intrinsically an action against the State. *Same cases.*

Under the constitution of this State all claims not otherwise provided for by general law must be examined and adjusted by the Board of State Auditors. Constitution, Art. 8, sec. 4. Over that Board we have no con-

trol. *People ex rel. Dewey v. Board of State Auditors*, 32 Mich., 191.

It would therefore be beyond our province to discuss the effect on these claims of the great delay, or of the continued and repeated acquiescence of the county authorities. If, as we have before suggested, the State cannot be sued on claims against it, there would be no power in the courts to review the action of any officer or tribunal to which the State sees fit to confide the auditing of such claims, where the duty is anything but ministerial. Executive discretion is not open to judicial review. *Sutherland v. Governor*, 29 Mich., 320; *Aud. Gen. v. Pullman Palace Car Co.*, 34 Mich., 59.

We think there is no remedy in this case by mandamus, and it must be denied. But the case is not one in which under the circumstances we think it necessary to give costs, as the question is new and its settlement important for the general interests.

The other Justices concurred.