HENRY H. APLIN, AUDITOR GENERAL, v. THE BOARD OF SUPERVISORS OF SHIAWASSEE COUNTY.

*Taxes—Accounting between State and county—Interest.*

1. The loss upon State tax lands sold under the provisions of section 124 of the tax law of 1869 is not a proper charge against a county, said act being *prospective* only in its operation. *Auditor General v. Supervisors of Monroe Co.*, 36 Mich. 70; *Auditor General v. Supervisors of Saginaw Co.*, 62 Id. 579; *Auditor General v. Supervisors of Ottawa Co.*, 76 Id. 295.

2. This case is distinguished from *Auditor General v. Van Tassel*, 73 Mich. 28, and *Auditor General v. Supervisors of Grand Traverse Co.*, Id. 182, in that in those cases the respondent sought to set off as a counter-claim the money paid to the State for losses upon the sale of State tax lands, and in this case such losses are made one of the items in relator's account.

3. The following interest charges by the State to the several counties are held proper:
   *a*—Upon taxes charged back to the county, and upon items erroneously credited to the county, and thereafter charged back.

    *b*—Upon moneys paid for the use of the county for the benefit of the deaf and dumb.

    *c*—Upon annual balances due from the county to the State.

*Mandamus.*   Argued February 18, 1889.   Denied April 19, 1889.

Relator applies for *mandamus* to compel respondent to apportion among the several townships for assessment the amount of indebtedness from the county to the State. The facts are stated in the opinion.

*S. V. R. Trowbridge,* Attorney General (*Moses Taggart,* of counsel), for relator.

*S. F. Smith* and *James M. Goodell,* for respondent.

[The points of counsel are fully stated in the opinion.— REPORTER.]

    LONG, J.  Petition for *mandamus.*

    *Mandamus* is asked by the relator, as Auditor General of this State, to compel the board of supervisors of Shiawassee county to apportion among the several townships in said county the sum of $42,832.30, claimed to be owing by said county to the State.

    It is claimed in the petition that on September 28, 1887, the relator sent to the clerk of said board a statement showing the amount of State tax apportioned to said county, with the following notice:

    " There is also to be levied as a portion of the county taxes, as required by section 22, Act 153, Laws of 1885, unless paid prior to October 1, the indebtedness of your county to the State on the first day of July, 1887, then amounting to $42,832.30. You will cause the above to be laid before the board of supervisors of your county at their session in October, 1887."

    It is further claimed that said indebtedness was the continuation of an indebtedness, the larger part of which

had existed for several years, but which had been permitted to gradually increase from year to year until it reached the amount above stated; that regular statements of account have been sent to the clerk of said board in each year, but that the board has failed, neglected, and refused to apportion such indebtedness, as required by law, among the several townships, or to collect or cause to be collected and paid over to the State the amount due, although such annual statements were regularly laid before such board; that the said sum is the true and actual amount due from said county to the State, as appears from the files and records in the Auditor General's office.

The respondent admits by its answer that these statements have been so furnished, but denies the correctness of such statements, and that the county is indebted to the State in the amount named.

It is claimed by the respondent that prior to the year 1866, as appears by the records in the office of the Auditor General, and from his annual reports, there was a credit balance in favor of said county from the State from the year 1843 to 1865, inclusive, but that none of the balances during any of that period were ever paid in cash or otherwise settled and discharged, but were carried along in the account from year to year; and the balances against the county since the year 1865 to the present time have been carried along in the account in a similar manner without being paid or settled.

It is further claimed by respondent that interest at 7 per cent. per annum has been charged upon nearly all items entering into said accounts, and that said interest is charged to the first day of July of each year, when the balance is struck, and the balance of the account is carried forward as the first item in the new account for the year succeeding, and interest is computed upon such

balance as well as upon the other items of said account, and that by this method interest upon interest is charged from year to year, and has been so charged since the year 1866 to the present time, and the large balance now claimed to be due is made up in great part of the items of interest so computed and compounded. It is insisted that the practice of charging interest from year to year, and compounding the same in the manner so done, is without warrant of law, and these items in the account of interest charges should be eliminated from such account.

It is further claimed that during the same period there have been certain taxes charged back to the county, in gross, in the statements of account so made by the Auditor General, and that in the statements furnished by the Auditor General to the treasurer of said county these taxes have been charged back to the county, and that interest at 7 per cent. per annum is computed and compounded from year to year upon the taxes so charged back from the 1st day of February of the year succeeding that for which the taxes were levied up to the 1st day of July of the year when said taxes are so charged back to the county.

It is further claimed by respondent that there appear in the account as charged against the county from the year 1869 to 1875 various sums of money for losses sustained by the State arising under section 124 of Act No. 169, Laws of 1869; that these items for these years amount to $5,207.81; that interest has been computed upon these amounts from year to year, so that these items as they appear in said account, with interest, now amount to $13,168.92, and that this amount is an illegal claim against the county.

It is further claimed that there was charged back to the

county under date of March 18, 1874, "error in credit of returns:"

| | |
|---|---|
| Taxes of 1866 | $506 84 |
| Interest to June 30, 1873 | 276 23 |
| A total of | $783 07 |

Also, under the same date, "error in credit of returns:"

| | |
|---|---|
| Taxes of 1867 | $1,802 40 |
| Interest to June 30, 1873 | 798 46 |
| A total, with interest added | $3,383 93 |

That the interest so charged upon said items was compounded from the dates the errors were made to June 30, 1873; that the interest so compounded and charged in the year 1874 has been carried along in said account from year to year from that time with interest compounded thereon, until at the date June 30, 1887, the interest item alone upon said two items of error amounted to $6,427.80, and of which amount $3,253.69 is compounded interest and an illegal charge, and should be deducted.

It is further claimed that the county has been charged by the Auditor General in these statements of account with various items of money paid at the Insane Asylum, the Deaf and Dumb Institution, and School for the Blind, and upon each of said items interest is computed and charged from the dates thereof to July 1 of the current year, when a balance was struck and carried forward, and interest computed thereon from year to year, and that such interest charges are illegal.

Respondent alleges that, upon making these deductions and recasting the account between the State and the county, but a small amount will be found justly due from the county to the State.

It is further claimed that the aggregate amounts charged against the county during the period from 1866

to 1885, exclusive of interest charged in account, and taxes, etc., charged back, are the following:

| | |
|---|---:|
| State tax | $248,645 59 |
| Collected by county treasurer | 121,095 52 |
| Cash paid county by State Treasurer | 3,400 64 |
| Miscellaneous debits | 12,558 30 |
| Total debits | $385,700 05 |

And during the same period the aggregate amounts credited to the county, exclusive of interest, are as follows:

| | |
|---|---:|
| Cash paid to the State Treasurer | $184,785 06 |
| Delinquent taxes | 96,830 95 |
| Miscellaneous credits | 12,507 45 |
| Total credits | $394,173 46 |
| Total debits | 385,700 05 |
| Credit balance in favor of county | $8,473 41 |

Respondent gives the following as an illustration of the interest charges upon taxes charged back: That on June 30, 1878, the Auditor General charged back to the county, taxes, interest, and expenses upon a list of lands, aggregating $3,177.87.

| | |
|---|---:|
| Of this amount the taxes were | $1,778 46 |
| The interest thereon was | 1,346 38 |
| Expenses of sale | 53 03 |
| Total | $3,177 87 |

The first item in said list is the taxes on the W. ½ of the N. W. ¼, section 14, township 7 N., range 1 E., for the year 1855, $4.55; the interest thereon, $16.20. In the same list, among other items, there are three of drain taxes for the year 1867, charged back, to wit:

| | Tax. | Interest. |
|---|---:|---:|
| S. pt. of N. E. frl. ¼, sec. 4, T. 5 N., R. 4 E. | $190 94 | $195 71 |
| W. ½ of S. E. ¼, sec. 4, T. 5 N., R. 4 E. | 190 94 | 195 71 |
| E. ½ of S. W. ¼, sec. 35, T. 5 N., R. 4. E. | 228 94 | 234 66 |
| Total | $610 82 | $726 08 |

It is claimed that interest is computed and charged against the county in the same manner upon all the other items in said list, and in other lists for other years, and the interest so charged against the county enters into the account between the county and State, and helps to create the large balance of account claimed.

On the filing of the answer of the respondent to the petition, counsel for the respective parties agreed upon the following facts:

1. It is admitted from the year 1845 to the year 1865, inclusive, there was a credit balance from the State to the county.

2. It is admitted that upon the first day of July of each year balances have been struck by the Auditor General only since the year 1865, and upon such balance interest has been charged from year to year by the Auditor General against the county.

3. It is admitted that the statements contained in respondent's answer, showing the amounts charged and credited to the county from the year 1865 to the year 1886, inclusive, is substantially correct, and that the statement of the amounts charged against said county, exclusive of interest charged in such account and charged back, as well as the amounts credited the county, exclusive of interest, is substantially correct. It is also admitted that in the accounts between the county and State the amount of taxes charged back to the county is entered in the statement of account made by the Auditor General, and transmitted by him to the clerk of the county, to be laid before the respondent at its session in October, and that interest thereon, where the same is not paid, is computed by the Auditor General at the end of the financial year; that the item $3,177.87, given as an illustration in respondent's answer, made up of taxes, $1,778.46; interest thereon, $1,346.38; and the expense of sale, $53.03,—is a correct illustration of taxes and interest charged up against said county, but that interest upon charged back taxes was only computed at the rate of 7 per cent., and the taxes have been charged back to the county for such a length of time that the interest thereon, when carried in the balance from year to year, amounted to the sum stated in the respondent's answer.

4. That the statement in respondent's answer as to interest computed and charged against the county, as appears from the statements of the Auditor General in the several years from 1867 to 1885, is substantially correct, but that the item $271.78, for 1867, should have been $243.45, and the item $1,031.12, taxes for the year 1870, should have been $1,034.56, and in the same year the item of interest, $209.75, should have been $210.59, and the item of expense should have been $57.30, instead of $56.30.

5. It is admitted, as alleged in respondent's answer, that $5,207.81, charged for losses sustained by the State arising from the sale of tax lands under section 124, Act 169, Laws of 1869, is correct, and that the statement in respondent's answer of error of corrected returns of taxes of 1867, $1,802.40, and interest thereon, is substantially correct; that such erroneous credit of $1,802.40, with such interest so compounded at 7 per cent., was charged and applied by the Auditor General as an offset to the erroneous credit which the county received from the Auditor General's office; also that the statement of respondent's answer as to the charging of the county with items of money paid out to the Insane Asylum and Deaf and Dumb and Blind Asylums, and the interest charged thereon by the Auditor General, is correct. This admission extends to the showing from the Auditor General's books only.

6. That until the year 1882 the county treasurer of Shiawassee county, after the sale of tax lands in October of each year, and either in the month of October or November in each year, came to the Auditor General's office relating to the statement of accounts with Shiawassee county, so far as the same related to the accounting by such treasurer for moneys raised by him, to be paid to the State; and that no objections were made by such county treasurer to the accounts of the State with said county until October or November, 1878, and then the taxes charged back under what is known as the "five-years list" were objected to; about which time the following resolution was adopted by the board of supervisors of Shiawassee county, to wit:

"*Whereas,* It appears from the account of Shiawassee county with the State of Michigan, transmitted by the Auditor General to the clerk of this board, and now on file here, that there is claimed

by the State as due from Shiawassee county the sum of twenty-three thousand one hundred and eighteen dollars, called 'old account;' and

"Whereas, A large amount of said old account is made up of the deficiency arising at different times on the sale of State tax lands, and the interests and charges on such deficiencies; and

"Whereas, It has been decided by the Supreme Court of the State of Michigan in the case of The People, on the relation of the Auditor General, v. The Supervisors of Monroe County (36 Mich. 70) that the State is not authorized to charge back to the county deficiencies arising from the sale of State tax lands:

Now, therefore, be it resolved by the board of supervisors of Shiawassee county that a committee of two, one of whom shall be the clerk of the board, be appointed by the chair to examine into said old account, and ascertain the exact amount arising from such deficiencies, and, when ascertained, request, in writing, the Auditor General to credit the county with the amount, or deduct it from said claim of $23,118; and be it further resolved that the county treasurer hereafter pay no money to the Auditor General in behalf of the county except on current accounts, and on 'old accounts' over and above the amount of such deficiency on State tax lands, and all payments by the treasurer to the State be accompanied by statements showing on what claim the money is paid."

That afterwards, and on December 20, 1878, a written request or demand was made upon the Auditor General, of which the following is a copy, viz.:

"To HON. RALPH ELY,
        "Auditor General.

"Sir: We, the undersigned, a committee of the board of supervisors of the county of Shiawassee, being duly appointed and authorized by said board, do hereby request and demand that you, as such Auditor General, cause to be placed to the credit of the county of Shiawassee, in its account with said State, the sum of $7,292.67; the same being so much of the item called 'old account' as has been charged back to said county at various times under section 124 of Act No. 169, Laws of 1869, and interest thereon from the date of each respective charge to the date hereof."

To this demand the Auditor General replied on December 31, 1878, as follows:

"The demand for credit in accordance with sec. 124 of Act No. 169, Laws of 1869, is refused by and with the advice of the Attorney General."

That since the year 1878 the item of loss on the five-

year list charged back to the county of Shiawassee has been disputed by the board of supervisors, but prior to the year 1887 no other specific objection to the accounts of the Auditor General was made.

7. That in each year from 1869 down to 1888, inclusive, money has been paid by the county through its county treasurer to the State, amounting in the aggregate to $265,175.78. That statements of accounts from 1865 have been laid before the board by their clerk, each year, but that the item marked "old account" was not recognized or acknowledged by said board as valid claims against the county.

The contention of the respondent is that the following named items of charges in the account should be stricken out:

1. The "five-year lands," with all accrued and compounded interest thereon.

2. Compound interest on all charged back taxes.

3. Compound interest on errors in credit of returns.

4. Interest on moneys paid by the State for the benefit of the deaf, dumb, and blind.

5. Interest on balances into which illegal items enter.

The first disputed item in the account consists of losses sustained by the State upon the so-called "five-year lands" under section 124, Act No. 169, Laws of 1869. The principal sum is $5,207.81, to which is added interest, computed at 7 per cent., to June 30, 1887, making a total of $13,168.92. This section of the act provides that the Auditor General shall in the month of September each year furnish to the county treasurer a list of all State tax lands remaining unsold for five or more years from the time such lands were bid off to the State, which lands shall at the next annual tax sale be offered for sale to the highest bidder, without reference to the minimum as established by law, or the cost to the State of each parcel, in taxes, interest, and charges; and all moneys received at such sale in excess of the amount

74 MICH.—35.

charged against any parcel of land so offered shall be placed to the credit of the county in which such parcel of land may be situated; and, if any parcel of land so offered shall be sold for less than the amount for which it was bid off to the State, the proper county shall be charged with the difference between the sum for which such parcel was so sold and the amount for which it was originally bid off to the State, etc. This section of the statute came before this Court for construction at the January term of the Court in 1877. *Auditor General v. Monroe Supervisors*, 36 Mich. 70. In that case, Mr. Justice CAMPBELL, speaking for the Court, said:

"Every dollar of taxes returned unpaid in due course of law is a payment to the same extent of the debts due from the county to the State, and the law has always required annual statements and balances of accounts to be struck on this basis. Every tax legally set aside is charged as a new item of indebtedness. But until 1869 no provision was made for charging back any other items connected with taxes. The balances carried over from year to year in accordance with law could only be changed to the extent of these specific deductions for void taxes."

This section was repealed without any saving clause in 1875. Laws of 1875, page 270. It was held in that case that the State had no authority to charge the amount back to the counties that the lands failed to bring upon such resale, or at least until such taxes were held to be illegal and invalid by some competent authority. This decision was placed upon the ground that this statute, of which this section formed a part, was an independent and entire law, entitled "An act to provide for a uniform assessment of property, and for the collection and return of taxes thereon," and that, if valid at all, it was prospective only; and that the losses thus sustained upon purchases made before the act took effect, and which the

State sold under section 124, could not be charged back to the county, but such loss must fall upon the State. This section of the statute came before this Court again in April, 1886, in the case of *Auditor General v. Saginaw Supervisors*, 62 Mich. 579 (29 N. W. Rep. 492), and this Court cited and approved the case of *Auditor General v. Monroe Supervisors*, and held that the Auditor General had no authority to charge back to the county the deficiency arising from the sale of these lands under the provisions of this section, and it was held that the credits claimed by the State upon the losses on the five-year lands should be disallowed.

Notwithstanding the opinion of this Court rendered in April, 1877, in the case of *Auditor General v. Monroe Supervisors, supra,* it appears that, although the Auditor General was asked in 1878 by the respondent to strike the claim made under this section from the account, this demand was refused; the Auditor General claiming that such refusal was based upon the opinion of the Attorney General. Again, the Auditor General asks this Court for the writ of *mandamus* to compel the board of supervisors to assess an item amounting to over $13,000 arising under this same section, and for a deficiency arising from the sale of these five-year lands. It would seem that, after this Court had upon two occasions denied the writ for the very purpose for which it is now asked, the matter would be placed beyond contention that the counties could not be so charged. I see no reason for overturning the doctrine laid down in the former decisions. This item of $13,168,92, under these decisions, is not a proper charge against the county for the reasons given in *Auditor General v. Monroe Supervisors, supra,* and should be stricken from the account.

The learned Attorney General, however, claims that under the ruling of this Court in *Auditor General v. Van*

*Tassel*, 73 Mich. 28 (40 N. W. Rep. 847), and *Auditor General v. Grand Traverse Supervisors*, Id. 182 (41 N. W. Rep. 223), the respondent is not entitled to raise this question in this proceeding, as it is an attempt to set off the claims against an indebtedness due the State. This item is not, however, claimed as a set-off or counter-claim. It is one of the items entering into the State's account against the county, and for which the writ is asked to compel the board of supervisors to assess and collect. It is not a counter-claim set up in the answer of the respondent, which it seeks to set off against a claim of the State, but one of the items entering into relator's account.

In *Auditor General v. Van Tassel, supra,* the writ of *mandamus* was asked to compel respondent, who was treasurer of the county of Tuscola, to pay over to the State the sum of $19,549.95. It appeared that there was apportioned to Tuscola county a State tax for the year 1887 of $20,626, and that the sum of $19,549.95 was actually collected and paid into the hands of the county treasurer. This amount the treasurer refused to pay over, claiming to act under the board of supervisors of the county, who claimed that the State had a large amount of money in its hands belonging to the county, which had been paid to the State under the provisions of section 124, Act No. 169, Laws of 1869. These moneys so claimed to be held by the State the county sought to set off against the amount of State tax then in the hands of the county treasurer, and it was held by this Court that the county could not in such a proceeding set up by way of counter-claim a demand of its own against the State, and the writ was issued compelling the county treasurer to pay the moneys over to the State.

In the case of *Auditor General v. Grand Traverse*

*Supervisors, supra,* it appeared that in the year 1879, outside of the ordinary taxes of that year then apportioned, there was nothing due the State; that in September, 1887, the Auditor General served upon the clerk of the board of supervisors the usual statement showing the amount of State taxes apportioned to such county for the year 1887, and the amount of indebtedness of the county to the State on July 1, 1887, amounting to $11,616.60, and asked the board to levy this amount of indebtedness as required by section 22, Act No. 153, Laws of 1885. This indebtedness had increased from year to year from 1879, but no part of it grew out of the provisions of section 124, Act No. 169, Laws of 1869, and no claim was made by the respondent but what every item in the account as presented by the State was a valid claim against the county. The respondent, however, insisted that it had a claim against the State for moneys paid under the provisions of section 124, Act No. 169, Laws of 1869, which, with interest at 7 per cent., amounted to $2;149.18; and that this amount should be allowed as a set-off against the claim made by the State. The Court, following the ruling made in *Auditor General v. Van Tassel, supra,* held that this claim of set-off could not be considered by this Court. Chief Justice SHERWOOD, delivering the opinion of the Court, said:

"The set-off claimed by the county is in its nature in *assumpsit,* and the right claimed to make the set-off is only an irregular form of action against the State; and a suit cannot be maintained, directly or indirectly, involving a common-law issue only, against the State;" citing *Ambler v. Auditor General,* 38 Mich. 746; *Auditor General v. Supervisors,* 62 Id. 579; *People v. Miles,* 56 Cal. 401, and other cases.

As the account will have to be recast, and certain other errors are complained of, we shall therefore consider the other items of the account. It is conceded

that the account contained certain charges against the county for errors in credit of returns, and that upon the annual statement of balances these items appear from year to year. Illustrations are given in the record, and which have been cited here, showing how these errors have arisen, and just how they have been treated in stating the account and striking balances. There can be no doubt that under the tax law these amounts are properly chargeable back to the county. In the Revised Statutes of 1838 (page 99) we find a provision by which the Auditor General is directed that if the error is discovered after sale, and before conveyance, he shall not convey, but shall forthwith cause the purchase money and interest thereon to be refunded out of the State treasury to the purchaser, and if the error originated in the county or township officers the sum so paid shall be charged against the county from which the tax was returned, and the board of commissioners shall cause the same to be assessed, levied, and collected, and paid to the treasurer of the State. If error was discovered after conveyance that made the sale invalid, upon satisfactory proof the Auditor General was authorized to pay such money, and charge the same back to the county from which the tax was returned, with interest at 7 per cent., and the same was to be assessed and levied as provided above. These provisions were substantially continued in the general tax law of 1853, and somewhat similar pro_ visions have continued in the general tax law ever since. It has been the custom of the Auditor General's office for more than fifty years to charge interest to the county upon these taxes charged back, as well as upon items erroneously credited to the county, and thereafter charged back. Annual statements have been furnished the respondent, and now for the first time in the history of these accounts is there any claim made that this was

error. In 1878, when complaint was made to the Auditor General by respondent of the item arising under the statute of 1869, no claim was made that there was error in these items; and no such claim was ever made, as appears by this record, until the writ of *mandamus* was asked to compel the levying of such taxes. Presumably other counties of the State have acquiesced in this system, and we think the respondent cannot now complain. Counties may save a large part of this interest charged, by complying with the law, and paying over to the State the amount due it annually.

We do not think there is error in the item of interest charged by the State upon moneys paid by it for the use of the county for the benefit of the deaf and dumb. Section 1851, How. Stat., provides:

" In cases where persons, residents of this State, who are deaf and dumb, but who, on account of their poverty, are unable to furnish themselves with suitable clothing and other necessary expenses for attending school at the institution for the deaf and dumb, the board of trustees shall have discretionary power to render them such assistance, not exceeding forty dollars per annum for each person, and for that purpose may issue a certificate, directed to the Auditor General, that such amount is necessary for the benefit of such individuals, who shall draw his warrant upon the State Treasurer therefor; and any such sums are hereby appropriated, and shall be paid out of any moneys in the general fund not otherwise appropriated, and the Auditor General shall charge all such moneys as drawn to the county of which such person is a resident, or to which he or she belongs, to be collected and returned to the general fund as any State taxes are required to be by law."

Section 1877 makes similar provisions for the case of the blind. It is evident from the relating of these statutes that it is the legislative intent to make these sums of money county charges, and not charges to the State; but for the convenience of the respective boards of trus-

tees in at once obtaining the money for the support of such indigent persons, they may draw directly from the State, and the Auditor General at once charges such moneys over to the county, and the same is to be collected and returned as other of the State taxes. The State has paid the money for the benefit of each county whose duty it is to care for such persons. These moneys came to the State by the collection of taxes apportioned among the several counties, and it is evident that it was intended that the county for whose benefit the money is paid should make good the general fund for all such advances. If no interest was to be paid upon the moneys so advanced, then the State or the other counties would be compelled to aid in some degree the support of persons who are properly chargeable to the county of which they are residents. This custom of charging interest on all advances to the counties has been followed by the Auditor General's department for a long series of years, and no question has been raised. All the counties have acquiesced in such rulings, and we do not think after the lapse of all these years this Court is authorized to interfere in their system of book-keeping and keeping the accounts of the various counties throughout the State. If the system of charging interest upon these advances is doing any injustice to the counties, it is a matter of legislative interference, and not for the courts, in view of the construction which we think the statute warrants.

Another item remains to be noticed,—interest on annual balances. It is claimed by the learned counsel for respondent that the manner of computing interest upon these annual balances as adopted by the Auditor General is in fact compounding the interest with annual rests, and that this is unwarranted in the law. Counsel have devoted great space in their briefs to the discussion of this question, and in their oral arguments entered into a lengthy

and learned discussion of the principles upon which interest charges are based. These arguments relate mostly to the question that the State is not liable to pay interest to individuals having claims against her, and the learned counsel then asks: If the State is not liable to pay interest to individuals having claims against her, why should she pay interest to a county,—a subdivision of the State itself? If the State is not liable to pay interest to the county, why should the county pay interest to the State? And if it should be thought that interest is properly chargeable against the county in any case such interest should not be compounded. We think counsel misconceive the plain intent of the statute. By section 1106 of Howell's Statutes, the Auditor General is to state the account with each county on the 1st day of July in each year, and by section 1030 this statement is the basis of apportionment to the counties made before October. Section 1030 also provides:

"The Auditor General shall also include in the amount of the State tax so apportioned to any county the amount of indebtedness of such county to the State as shall be shown by the statement of the account between the county and the State made by the Auditor General on the 1st day of July next previous to such apportionment, which amount shall be apportioned by the board of supervisors of the proper county at the same time as are the State taxes contained in such apportionment of the Auditor General, and shall be levied in the same manner as, and become a portion of, the county taxes of the same year."

By the provision of section 1107 a statement is again to be made by the Auditor General when the county treasurer makes his return of delinquent taxes; the Auditor General to deduct from the amount of credits of such delinquent taxes the amount of bids to the State, and the balance as is shown after such deduction shall be paid to or by the county, as is shown should be done.

"This section shall be so construed as to provide for such a settlement of accounts between the State and the several counties as shall require the counties to carry the uncollected taxes until the period of redemption expires, after which time the State shall carry such taxes."

By section 77, Act No. 153, Laws of 1885, the accounts between the State, county, and each township are to be adjusted on the basis of crediting and paying to each the taxes collected for each, with interest thereon; and the apportionment of taxes, by the provisions of section 22 of the act, including county indebtedness shown by the preceding July statement of account, is to be made on or before the 1st day of September in each year.    It is evident from the several acts that the Legislature from the earliest tax laws have treated these balances as debts due and to be paid by the several counties over to the State; at least, every Auditor General from the early history of the State has so treated such balances, and has charged interest thereon.    As early as 1850 some question arose as to the propriety of these interest charges on balances found due on these July statements, and Hon. John J. Adam, then Auditor General of the State, submitted the question to Hon. Geo. V. N. Lothrop, the then Attorney General, and Mr. Lothrop gave it as his opinion that the account made and submitted July 1 to county officers became a sum certain,—a liquidated debt between county and State,—and added:

"In analogous cases in ordinary transactions interest becomes thereafter demandable, and no sufficient reason is perceived why the rules shoudl not apply in the present case.· The rule of interest, however must conform to the general rate provided by law,—7 per cent."

This rule has been followed from long before that period to the present time in the Auditor General's department, to charge interest upon these annual balances due to the State.    When the balance is struck the

amount is then definitely known to the county, and it becomes its duty to pay such indebtedness over to the State. Some of the counties have made such payments, and paid the balance found due. Others, the respondent among the number of counties, have failed and neglected to even assess the amount, but have continued from year to year to let the amount of such balance increase, until now the State demands payment, and asks this Court by *mandamus* to compel the board of supervisors to assess the amount and pay the same over to the State, and for the first time in the history of these balances, so far as this respondent is concerned, the question of the interest on the balances is raised, though it has paid over to the State from year to year large amounts of money due. The several counties of the State have for nearly 40 years acquiesced in this practice, which has been well known throughout the State to the officials of every county, and we see nothing in the conduct of the respondent to overcome this lapse of time. Indeed, if a new policy was now to be inaugurated, and a new system of book-keeping adopted, by striking out all these interest charges on such balances, much wrong would be done to counties which have promptly paid these old accounts, and kept up the balances, and a premium offered to counties which have been delinquent in the payment of their just debts to the State. It is the duty of the counties, under the law, to assess and collect these moneys, and pay them over to the State, and until such payments are made the county is properly chargeable with the legal rate of interest on such balances. It is not a compounding of interest, as claimed by respondent. When the balance is struck it becomes a debt due the State, and if the whole or any portion of the balance is carried over to the next year, being unpaid, it enters into the new account, and adds to the balance then due, and draws legal interest.

It follows from what has been said that the amount claimed for deficiencies arising from sales of these five-year lands under the act of 1869 should be stricken from the account, and the account recast, and for this reason the writ must be denied; but we find no error in the other interest charges made, and the county of Shiawassee, upon such new account so made up, should assess and pay over the amount so found due.

CHAMPLIN and CAMPBELL, JJ., concurred with LONG, J.

SHERWOOD, C. J. I agree with Judge Long's opinion in this case, except as to the manner of charging interest, which in effect compounds it against the county. I find no law authorizing this, and, if it has been the custom of the department to do so, it is time the custom was discontinued, as it is against the general law and policy of the State.

MORSE, J., concurred with SHERWOOD, C. J.