AUDITOR GENERAL *v.* MONROE COUNTY TREASURER.

1. EVIDENCE—PRESUMPTIONS—PUBLIC OFFICERS.
   It is presumed that a public officer performs his duty.

2. SAME—TAXATION—MANDAMUS — SPECIAL ASSESSMENTS — DRAIN TAX.
   In mandamus proceedings to compel a county treasurer to pay to the State with interest the amount of a drain tax charged back by the auditor general, it will be presumed, in the absence of proof as to whether the tax was a county or township drain tax; that in making return of the same to the auditor general, the treasurer performed his duty to return unpaid county drain taxes and that it was not a township drain tax which the officer should not return.

3. TAXATION—COUNTY ACCOUNTS—STATE BIDS.
   After the State had bid in the land for such tax, which appeared to be regular on the face of the return, the auditor general correctly credited the amount thereof to the county and carried it as a credit until the tax was adjudged to be invalid by the decree of a court of chancery.

4. SAME — INTEREST — STATE TAX LANDS — AUDITOR GENERAL — COUNTIES.
   Having received credit for the amount of the tax as so much cash, the county was chargeable with interest on the same unless it could show that the auditor had notice of facts or reasons justifying him in canceling the tax before he did so.

5. SAME—DEMAND—JUDGMENT.
   Until the tax was held to be invalid by the decree of a court in chancery or by some other competent authority, the auditor general was under no duty to charge it back to the county. *Auditor General* v. *Supervisors*, 36 Mich. 70–77.

6. SAME.
   And the interest was properly computed by the method of annual rests, with interest upon the yearly balances.

Mandamus by Oramel B. Fuller, auditor general of the State of Michigan, to compel Edward L. Cousino, treasurer of the county of Monroe, to pay to the State a certain tax charged back to said county by the auditor. Sub-

mitted October 4, 1911. (Calendar No. 24,050.) Writ granted November 3, 1911.

*Franz C. Kuhn*, Attorney General (*Charles W. Mc-Gill* and *George L. Hauser*, of counsel), for relator.

*Jesse H. Root*, Prosecuting Attorney (*Willis Baldwin*, of counsel), for respondent.

Stone, J. The petition of the relator for a writ of mandamus represents:

(1) That he is the auditor general of this State, and that it is his duty to collect from the several county treasurers in the State such sums of money as may be found due from the several counties on general account, and for taxes charged back to said counties, where sales to the State have been canceled under decrees of a court of competent jurisdiction.

(2) That in the year 1873 the S. W. ¼ of the S. W. ¼ of section 18, in town 5 S., range 10 E., being in the township of Berlin, in the county of Monroe, was assessed for a certain drain tax known as the Moore drain or ditch for the sum of $68. That the said tax was not paid to the treasurer of the said township of Berlin within the time prescribed by law, or at any other time, and on or before the 1st day of March, 1874, was returned delinquent to the county treasurer of said county, and subsequently said description was returned to the auditor general by the county treasurer of said county as delinquent for said tax, which return was received by the auditor general under date of March 30, 1874, and a copy of said return is annexed to the petition.

(3) That said description having been returned delinquent to the auditor general, as aforesaid, the county of Monroe was given credit upon the books of the auditor general for the amount of said tax, to wit, $68, as so much cash, which said credit continued upon the records of the auditor general's office until the 29th day of January, 1909, as will more fully appear.

(4) That on the 5th day of October, 1874, said description was sold and bid to the State at the county treasurer's sale for said tax of $68, together with interest and expense of sale, the amount of the said bid being $83.10; and, after the expiration of the period for redemption, said de-

scription was held on the records of the auditor general's office as State tax land down to the 29th of January, 1909, and during all of which period the county of Monroe was given credit on the books of the auditor general's department for said tax as so much cash.

(5) That under date of January 29, 1909, the circuit court for the county of Monroe, in chancery, in a certain cause pending therein, rendered a decree wherein it was ordered, adjudged, and decreed that "The ditch tax pretended to have been assessed in the general tax roll of the township of Berlin, in said county, for the year 1873, upon the S. W. ¼ of the S. W. ¼ of section 18, town 5 S., range 10 E., in said township of Berlin, is illegal and void, and is hereby set aside and vacated as a cloud upon the title of the claimant to said land." And the auditor general and other defendants and their successors in office were perpetually enjoined from taking any steps or proceedings to enforce the collection of said tax by the sale of said lands, or otherwise.

(6) That upon receipt of a certified copy of said decree at his office the relator, as auditor general, caused a cancellation of said sale to the State to be made, and the tax for which said land was returned delinquent to his office, to be charged back to the county of Monroe, together with the expense of sale and interest as provided by law, under date of June 30, 1909, amounting to the sum of $556.90.

(7) That under and by virtue of the provision of section 87 of the general tax law (1 Comp. Laws, § 3910), being Act No. 206, Pub. Acts 1893, as amended, it became and was the duty of the county treasurer of the county of Monroe to pay to the State of Michigan the said sum of $556.90 at the quarterly settlement ending June 30, 1909, between the State and said county, as provided in said section, in order to balance the account between the State of Michigan and Monroe county for such quarter. That said item of $556.90 was included in the statement of account made by the relator, as auditor general, between the State and said county as rendered to the county treasurer of said county for the quarter ending June 30, 1909, but that said county treasurer then and ever since has refused to make such payment, as it was and is his duty to do. That subsequent statements were made for the quarters ending September 30, 1909, December 31, 1909, and March 31, 1910.

(11) That on the 4th day of May, 1910, there was due

the State from said county by reason of the cancellation of said sale for said taxes and the charging back thereof, together with interest and expenses to the county of Monroe, the sum of $582.42. That relator caused a demand to be made upon Edward L. Cousino, county treasurer of said county, on said May 4th, to pay said sum forthwith to the State in settlement of the account, which he then and ever since has refused to do. The method of computation of interest with annual rests is set forth.

Relator prays that a writ of mandamus may be issued directed to said respondent commanding him forthwith to pay to the State of Michigan said sum, together with interest after May 31, 1910, which sum is now claimed to be due the State. An order that respondent show cause why a mandamus should not issue was made. In his answer the respondent admits the first paragraph of the petition; he denies the second paragraph; he admits that said description was returned delinquent to the auditor general of the State of Michigan, but is uninformed as to whether or not the county of Monroe was given credit for $68, and leaves relator to his proof in this regard. He is uninformed as to the fourth paragraph of the petition, and leaves relator to his proof. He admits the fifth paragraph of the petition. He is uninformed as to the sixth, and leaves relator to his proof, except that he admits demand for the sum of $556.90, made in the summer of 1909. He denies that it became and was his duty to pay the said sum. He admits the several demands made upon him as alleged in the petition.

Respondent alleges that, if the county of Monroe was given any credit for $68, it was a mistake, and that, in any event, the county could not be charged with the interest until after the discovery of the mistake and demand made on the treasurer, and that no such demand was made until after June 30, 1909. He further alleges that the relator, as auditor general, and said county, have made about 30 settlements since 1874, and each time had supposed such statements to be full and complete between the State and the county. He alleges that all drains in

said township of Berlin were laid out by a township drain commissioner, and not by highway commissioners of said township acting as drain commissioners, nor by a county drain commissioner; that, if the township drain commissioner did lay out and establish any drain in the year 1873, he did so under Act No. 98, Pub. Acts 1871; and that under said act there was no authority on the part of the county treasurer to bid in lands for such a tax for the State, but, on the contrary, it was the duty of the county treasurer under said act not to return said lands to the auditor general, but to hold said lands indefinitely for sale by himself for such delinquent tax; that the said act did not authorize the auditor general to receive returns for such delinquent township drain taxes, and did not authorize him to give the county credit for such delinquent drain taxes; that, if the county received credit for the alleged delinquent drain tax, it was a mistake. He further claims that the State is now estopped from disputing the correctness of such numerous settlements; and, after recapitulating the reasons why the respondent should not pay such sum so demanded, he claims the benefit of a demurrer to the petition, because it does not appear therein that the alleged tax was not a township drain tax.

Upon the proper showing, the following issues of fact were framed and sent down to be tried and determined by the circuit court for the county of Monroe:

"*First.* Is it true, as set forth in paragraph 2 of relator's petition, that the description of land [describing it] was returned delinquent to the auditor general of the State of Michigan by the treasurer of the county of Monroe under date of March 30, 1874, or any other date, for a certain drain tax known as the ' Moore Drain,' amounting to $68, assessed in the year 1873?"

The return of the circuit court for said county answers the above question in the affirmative.

"*Second.* Is Exhibit A, attached to said petition, a correct copy of the return of said land for said tax to the auditor general under said date; and, if not a correct

copy, in what respect does it differ from the original return?"

This question is answered by the circuit court as follows:

"Exhibit A, attached to the auditor general's petition, is a correct copy of the return of the county teasurer to the auditor general in the year 1874."

"*Third.* If said land was returned delinquent under date of March 30, 1874, for said tax to the auditor general of the State of Michigan, was the county of Monroe given credit as so much cash for said sum of $68, or any sum, by reason of the return of said land, and was said credit, if so given, continued upon the records of the auditor general's office until the 29th day of January, 1909 ?"

This question is answered by the circuit court as follows:

"*Third.* Under date of March 30, 1874, the county of Monroe was given credit on the books of the auditor general, by reason of such return, to the amount of $68; that said land was advertised and sold October 5, 1874, at which sale said description was bid to the State; that thereafter it was held on the State tax land list until the 29th day of January, 1909, when said sale was decreed invalid by the circuit court for the county of Monroe, in chancery; that from March 30, 1874, until 1909, no further entry, reference, or demand was made to or for said tax or said sum, and such sum was not included in any balance or demand made upon Monroe county until June, 1909."

"*Fourth.* Did the amount of taxes for which said description was returned delinquent to the auditor general in 1874 enter into any of the subsequent settlements between the auditor general, representing the State of Michigan, and the county treasurer of Monroe county, representing the county of Monroe, other than as a continuing credit given the county of Monroe in 1874?"

The return of the circuit court states that the answer to this issue is fully covered by the answer to the third, above set forth.

"*Fifth.* If the county of Monroe was given credit in

1874 by reason of a return of said land delinquent for any tax of 1873 to the auditor general, has any part or portion thereof been paid to the State of Michigan or otherwise in any of the settlements between the State of Michigan and the county of Monroe, or in any other manner?"

The circuit court answers this issue in the negative.

"*Sixth.* Was not this description assessed $68 on the original roll under the column headed 'Ditch Tax,' the name of the drain not appearing in nor on the roll, and the roll not showing whether this drain was a township or county drain?"

This issue is answered, "Yes."

"*Seventh.* Was this $68 assessed for a township or county drain?"

This issue is answered in the following language by the circuit court:

" It does not appear from the evidence whether it was a county or township drain."

"*Eighth.* If said land was returned delinquent under date of March 30, 1874, for said tax to the auditor general of the State of Michigan, was the county of Monroe given credit as so much cash for the said sum of $68, or any sum, by reason of the return of said land, and was such credit, if so given, continued upon the records of the auditor general's office until the 29th day of January, 1909? When was the first demand made upon Monroe county for this sum?"

The circuit court returns as follows:

" The answer to this issue is fully covered by the answer to the third above."

It appears from Exhibit A, the statement of delinquent lands made by the county treasurer to the auditor general, that the $68 were assessed upon the land in question for the "Moore ditch tax." It appears by the answer to the sixth issue that this land was assessed on the original tax roll under the column headed "Ditch Tax," the name of the drain not appearing in or on the roll. It may be stated that under the law the auditor general had no

access to the original tax roll. It was sufficient for him to know that the tax was assessed as the "Moore ditch tax" in the delinquent return. It appears from the answers to the issue sent down to the circuit to be tried that the land in question was assessed in 1873 for what was known as the "Moore ditch tax," amounting to $68, and that said description was returned delinquent thereafter to the auditor general. There was nothing in the return of the county treasurer to the auditor general which in any way disclosed to the latter that the assessment in question was not made under and pursuant to the county drain law then in force, being section 1756 of the Compiled Laws of 1871, which reads as follows:

"It shall be the duty of the county treasurer to return all lands upon which a tax shall be levied under this act, delinquent for such tax, to the auditor general, and the same shall be advertised and sold therefor, at the same time, and in the same manner, and subject to the like redemption as lands delinquent for other taxes. In case any lands belonging to individuals charged with a drain tax shall be bid off to the State, or sold to other parties, at the tax sales, the State treasurer shall pay over to the proper county treasurer the amount of such drain taxes."

This return to the auditor general was made in the month of March, as required by law. See Act No. 90 of the Laws of 1873. That statute provided that the amount of the taxes so returned should be placed to the credit of the county on the books in the office of the auditor general, which requirement seems to have been complied with by the auditor general.

The answer of the respondent having claimed that the assessment was under the township drain law as distinguished from the county drain law then in force, the seventh issue of fact was framed for the purpose of determining whether said tax was assessed for a township or county drain. As above indicated, the circuit court was unable to determine whether it was a township or county drain. In the absence of direct proof upon the subject, what is the presumption? It seems very clear to us that the pre-

sumption is that a public officer performs his duty. It appearing that the county treasurer made return of this tax to the auditor general, and that the auditor general gave credit to the county of Monroe therefor, it will be presumed that it was a proper tax to be so returned and credited. *Prima facie*, at least, this conduct of these officers indicates that the assessment was under the county drain law. It was treated as such by the auditor general in subsequent proceedings instituted for the purpose of foreclosing the lien under the general tax law then in force; the land appearing to have been advertised and bid in to the State.

It was properly carried on the records of the auditor general's office as State tax land until the decree of the circuit court for the county of Monroe, in chancery, on the 29th day of January, 1909, adjudged the said tax to be void. Until said tax and sale to the State had been decreed void in the manner set forth, said sum of $68 stood as a credit to the county of Monroe the same as so much cash. After said decree was made, the auditor general, acting pursuant thereto, canceled the said sale and charged back to the county of Monroe the amount of said tax for which the county had been given credit in 1874, together with the expense of sale and interest charges, which it was the duty of the county to pay under section 87 of the general tax law now in force. (1 Comp. Laws, § 3910, as amended by Act No. 83, Pub. Acts 1899.)

It is urged by respondent that because said matter remained *in statu quo* from March 30, 1874, until 1909, with no further entry, reference, or demand upon Monroe county, that the relator should not charge interest upon this sum. It is very evident from this record that the county of Monroe in 1874 received credit for this sum of $68 as so much cash, and has had the use of that money during all these intervening years. It entered into and became absorbed in the general account. The lands had been sold to the State and were held as State tax lands.

This record does not disclose that the auditor general had any knowledge or information which would have justified him in canceling this tax before he did so. It does not appear that he owed the county of Monroe any duty in relation thereto that he did not perform. As was said by this court in *Auditor General* v. *Supervisors of Monroe County*, 36 Mich. 70, 77:

"In regard to taxes charged back because of injunctions, there is nothing in any tax law which allows any taxes to be so charged back until they have been rejected or held invalid by some competent authority."

The general working of the tax system of this State is clearly set forth by Justice CAMPBELL in the case above cited. The auditor general, upon receiving notice of this decree, promptly canceled this tax and charged it back to Monroe county, together with the expense of sale and interest charges in pursuance of the provisions of section 87 of the general tax law now in force. It is conceded that the demand was made as alleged in the petition. Respondent's counsel insist that the whole proceeding from beginning to end was founded in a mistake. We are unable to agree with counsel in that contention.

Under the foregoing statement there appears to be but one other question to be considered, and that is the question of the computation of interest. The manner in which interest was computed by the auditor general on the original tax of $68 is fully set forth in an exhibit attached to the petition of relator. It is the claim of the attorney general that this method of computing interest with annual rests is the identical one that has been followed for many years, and that it has been fully approved by this court in the following cases: *Auditor General* v. *Board of Supervisors of Shiawassee County*, 74 Mich. 536 (42 N. W. 143); *Id.*, 76 Mich. 295 (42 N. W. 1101); *Mason* v. *Supervisor of Hazleton Township*, 82 Mich. 440 (46 N. W. 784); *Auditor General* v. *Board of Supervisors of Bay County*, 106 Mich. 662 (64 N. W. 570); *Auditor*

*General* v. *Bolt*, 124 Mich. 185 (82 N. W. 845); *Oppenborn* v. *Auditor General*, 140 Mich. 92 (103 N. W. 515). In *Auditor General* v. *Board of Supervisors of Shiawassee County, supra,* the subject of interest and annual balances is fully discussed by Justice LONG, speaking for the majority of this court. The case of *Mason* v. *Supervisor of Hazleton Township, supra,* seems to be directly in point. It was a proceeding between the treasurer of Shiawassee county and the township of Hazleton. An item of drain taxes was returned in 1871 for the taxes of 1870, and in 1872 for the taxes of 1871, as delinquent, by the township treasurer to the county treasurer of Shiawassee county upon certain lands. These lands were returned by the county treasurer to the auditor general, and, upon his books, the amount of the taxes was credited to the county in its account with the State. These taxes, being subsequently declared void by the circuit court of Shiawassee county, were charged back to the county with interest and expenses, as appears by a statement of the auditor general found in [*Mason* v. *Supervisor of Hazleton Township*] 82 Mich., on page 443 (46 N. W. 785) of the case. This table shows conclusively that interest was computed on the total item of tax for each year in identically the same manner as the auditor general has computed interest in the instant case. This method of computing interest was approved by this court, and held to be a charge against the township as charged back to the county by the auditor general, in the following language:

"I can see no reason, under the law of 1869—the ditch law heretofore referred to—why it cannot also be held for rejected or void drain taxes, when it has had the benefit, not only of a credit for them, but the actual money, and has disbursed it. And, under our system of taxation, if there can be no outlawry as between the State and the county, there ought not to be any between the county and the township. Then, as we have held in *Auditor General* v. *Supervisors*, 74 Mich. 536 [42 N. W. 143], that it was competent for the State to charge interest upon annual balances, and that this item was properly charge-

able back to the county, it follows that the township must pay it back to the county."

It is difficult for us to escape from the claim of the attorney general that this case is directly in point and controls the instant case. This course having been followed for many years by the auditor general with the sanction of this court, we do not feel authorized to depart from the rule. No demand could have been made by the auditor general upon the county of Monroe until the tax had been declared void by competent authority.

We think that the writ of mandamus should issue as prayed for, but without costs.

OSTRANDER, C. J., and STEERE, MOORE, and MCALVAY, JJ., concurred.