# EDWARD ROBY

*v.*

# THE CITY OF CHICAGO.

1. CONSTITUTIONAL LAW—*impairing the obligation of contracts.* The charter of the city of Chicago made a deed for land sold for the non-payment of taxes and special assessments *prima facie* evidence of the regularity of all the proceedings anterior to the judgment and precept, leaving the adverse party to rebut such presumption  The records being destroyed by fire, the act of 1872 to remedy the evils growing out of such destruction of the records, among other things, provided that deeds or certificates of purchase, in such cases, should not afford *prima facie* evidence of the regularity and legality of the prior proceedings: *Held,* that the latter act was only a rule of evidence, and was not unconstitutional as impairing the obligation of contracts or divesting rights, as the courts would, in the absence of such legislation, have probably adopted the same rule.

2. ESTOPPEL—*to deny legality of sale.* Where the city of Chicago, under the powers conferred by its charter, sold a tract of land for the non-payment of a special assessment, received the purchase money, and, through its proper officer, made a deed for the land sold, to the purchaser, and the city afterwards purchased the same land of the original owner, and the purchaser sued the city, in ejectment, to recover the land: *Held,* that as the city did not profess to sell the land as its own for a valuable consideration, and made no covenants upon which the purchaser could rely, the city was not estopped from denying the regularity and legality of the proceedings.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Mr. EDWARD ROBY, *pro se.*

Mr. I. N. STILES and Mr. JOHN LEWIS, for the appellee.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

This was an action of ejectment, brought by the appellant, against the city of Chicago. The plaintiff claimed under a deed made to him by the city, upon a sale of the premises in controversy for non-payment of a special assessment. The city, as appears from the argument of appellant, now occupies the property as a street, having bought the title of the former owners since the sale under the assessment. All the records pertaining to the sale by the city, as also the tax deed made by the city to appellant, were destroyed by the fire of October 9, 1871. On the trial, the plaintiff made secondary proof of the judgment, precept, deed and notice of sale, which was received subject to exception, a jury having been waived. After all this proof was offered, the court held it insufficient to show title in the plaintiff, under the eighteenth section of the act passed April 9, 1872, entitled "An act to remedy the evils consequent upon the destruction of any public records by fire or otherwise." The plaintiff brings up the record, and insists that the section of the act applicable to this case is a violation of the constitution, because, under the pretense of changing a rule of evidence, it impairs contracts and divests rights of property. In the view we have taken of this case, it is not necessary to attempt to define the limits of legislative power in regard to rules of evidence, as we are of opinion the section in question simply declares that to be the law which the courts would probably have held to be so, independently of this legislation.

Apart from this act, a tax or special assessment deed, like that executed by the city to the plaintiff, would have been evidence of the regularity of all proceedings pertaining to the sale anterior to the judgment and precept. The adverse

party, however, would have been at liberty to prove any irregularity in these proceedings affecting the validity of the sale, that is to say., any departure, by the officers of the city, from the material requirements of the law.

The judgment, precept and tax deed, made out a *prima facie* title for the plaintiff, raising, in his favor, a presumption of regularity in all other proceedings, which presumption his opponent was obliged to overcome; but antecedent irregularities could only be shown by the records, and while these were in existence, it was not a matter of very great moment where the *onus probandi* lay. When, however, these records were burnt, if the claimant under a tax deed.could, by parol proof of the judgment, precept and deed, raise all the presumptions in his favor which would attach to the originals, all the titles claimed under tax sales would be virtually made paramount titles. The judgment, precept and deed, would always be susceptible of proof, as the party claiming would be able to testify to the deed, and the officers would prove the judgment and precept, not in exact words and figures, but by testimony of an unsatisfactory, but still admissible, character. On the other hand, the adverse party would have no means of showing such irregularities in the proceedings as would vitiate the tax sale. They could be ascertained only by an examination of the records, and these are gone. The owner of property, which had been sold for non-payment of taxes, would thus be placed at an immense and unfair disadvantage. His title is to be divested by force of a purely arbitrary and artificial presumption, and all means of rebutting it are practically taken away. The purchase money in this case amounted to $2.28, and for this insignificant sum the title to property, worth at the time of the trial over $20,000, is to be held as vesting in the purchaser at a tax sale, although the proceedings anterior to the sale may have been all illegal, if we are to attach the same presumptions to parol proof of the judgment, precept and sheriff's deed, that the statute and the charter of the city of Chicago attach to the originals. It was

to prevent this injustice that the legislature, while passing an act for the restoration of the recorded evidences of title in counties where the records have been destroyed, incorporated into the law the section under consideration. The substance of that section is contained in the first clause, which provides that "no tax deed or certificate of tax sale, based on any proceedings the record of which shall appear to have been destroyed as aforesaid, shall be received in any of the courts of this State as *prima facie* evidence of the regularity of such proceedings, but the burden of proof shall be upon the person claiming under such deed or certificate to show the regularity and legality of all such proceedings." This section applies only to cases where the record of the proceedings is burned, which would of course include the record of the judgment and precept. The presumption, in other cases, arises only where the original judgment, precept and deed, are introduced, and may arise then not unjustly, because the means are at hand for its rebuttal. But we are wholly unable to see why the legislature can not provide that such presumption shall not arise from secondary or parol evidence of these muniments of title, or why it was not a very just exercise of its power, in view of the fact that the means of rebutting the presumption are destroyed.

We do not concede that the legislature could not, in all cases, take away this arbitrary presumption which it has itself created; but be that as it may, it can surely enact that this presumption shall not attach to secondary evidence under circumstances never contemplated by the original law. If the claimant under the tax deed has a vested right in these presumptions, it is certainly only in those which the statute attached to the original record, precept and deed. The law has not provided that any presumption should attach to secondary or parol evidence of their contents; and as the presumption is wholly arbitrary and artificial, and is raised by the statute in favor of a class of titles that are subjected to great strictness of criticism by the courts, we see no reason why a

presumption thus created should be extended beyond the letter of the statute creating it.

We are inclined to the opinion that, independently of the statute, a court would feel itself impelled by considerations of justice to hold, in the cases provided for by this statute, the presumption would not attach to secondary evidence. Whether it would be so held by the courts or not, we can entertain no doubt of the power of the legislature to enact a law to that effect. Such a law violates no vested rights, and prevents a great injustice.

It is further urged by appellant that the city, being the defendant in this case, is estopped, by her deed and its recitals, from denying the existence of the judgment and precept, or the regularity of all previous proceedings. That the doctrine of estoppel is sometimes to be applied to municipal corporations, is quite true, and the cases cited by counsel are illustrations; but the principles announced in them do not cover the present case. If the city had professed to sell its own land for a valuable consideration, and had made a deed therefor to the purchaser, no doubt it would be estopped by the recitals in the deed. It would not be permitted to deny that it had such title as it purported to convey, and if it professed to convey the fee, a title subsequently acquired would enure to its grantee; but in this case it did not profess to sell this land as its own. It sold it as the property of another, and without his consent, all bidders knowing that their title would be worthless if the city officers had not complied with the law, and that the city entered into no covenants that they had complied.

This claim of estoppel is, in effect, that any title which the city may have, as defendant in this suit, enures to the plaintiff, under the deed to him; yet there is no clause in the deed under which it could enure. The deed purports to convey the land of another, and if it fails to do so by reason of non-compliance with the law, the owner's title is unimpaired. He

can convey it to the city, or to a private person, as if it had never been sold for taxes, and the purchaser takes the title of the grantor, unaffected by an illegal sale.

The judgment must be affirmed.

*Judgment affirmed.*