## The People on the relation of The Auditor General v. The Supervisors of Monroe County.

*State and county: Taxation: Taxes returned as delinquent.* Where taxes have been regularly assessed and returned, the responsibility of the county to the state on account thereof is fulfilled, and the county is discharged from further duties.

*Taxes: State and county: Accounting with the state: Delinquent taxes: Payment.* Under the tax system of this state all unpaid taxes which are returned as delinquent belong to the state, and the counties have no further concern with or control over them, except in case any tax is found to be illegal and is set aside by the proper state authority in the manner pointed out by law; and every dollar of taxes returned unpaid in due course of law is a payment to that extent of the debts due from the county to the state, and the accounting between county and state is upon this basis.

*Statute construed: Retroactive effect: Collection of taxes: Title.* The provision in the tax law of 1869 (*Comp. L. 1871,* § *1090*) directing lands remaining unsold for five years after they were bid off to the state to be sold for what they would bring, crediting the county for any excess, and charging it for any deficiency, is held not to be retrospective. While as a matter of future policy this provision might fairly be considered as a means of ultimate collection, by making the county a guarantor, not

only of the validity of the taxes, but also of the marketable value of the security, and thus be within the title of the act, "to provide for the uniform assessment of property, and for the collection and return of taxes thereon," yet its purpose, if given retrospective effect, is different, and not within the purview of such a title.

*State tax-bids: Accounts between county and state.* The legal effect of this provision, if retrospective, is to authorize the state arbitrarily to shift off on the county its bad bargains in tax lands, and compel the county,— not to take them at their cost,—but to make up the deficiency arising on the sale by the state itself, and over which the county has no control. And its result is to require those who have already paid their taxes, to be taxed over again for the default of others, who may in turn have profited by their own default, by bidding in their lands for less than was levied against them.

*Accounts between county and state: Taxes: Injunctions.* The state is not authorized to charge back to the county because of injunctions any taxes which have been returned as delinquent, until they have been rejected or held invalid by some competent authority; though if the injunctions were issued under circumstances which left authority in the auditor general to reject them for illegalities, and he actually rejected them for adequate causes, the fact that he did not wait for a decree would not be important.

*Heard January 3.     Decided April 4.*

Application for *mandamus.*

*A. J. Smith, Attorney General,* and *Charles Upson,* for relator.

*J. Ronan, I. R. Grosvenor* and *E. Willetts,* for respondents.

CAMPBELL, J:

The auditor general applies for a mandamus to compel the county of Monroe to raise a state tax to refund to the state a balance struck against the county, which includes, among other things, a loss on state tax-lands sold for less than their cost, and also the amount of certain taxes the collection of which was stayed by injunction. These two principal items are contested, together with certain smaller sums of interest. It is claimed that the act of 1869, whereby provision was made for charging back to the county the losses on state tax-bids cannot be allowed to justify the charges in this case, and that the enjoined taxes were not lawfully charged back. Both of these questions involve an

inquiry into the theory and practice of state taxation; and the relative positions of state and county to each other in their financial dealings.

With some trifling exceptions, all county liability to the state must arise from state taxes for state purposes. It is only because these taxes are collected through the same processes with the local charges that any mutual debts and credits can arise. The state laws prescribe the methods of assessment, and the extent and manner of levying all these charges, the practical work being mostly done by neither state nor county, but by township officers, who make the valuations and apportion to each tax-payer his share of the burdens which they are required to lay upon the property on the rolls. As the validity of all the taxes chiefly depends on the regularity of the action of these subordinate officers, it is usually the case that a regular assessment will sustain the state tax, and that an irregular one will defeat it. The counties being the only municipal bodies directly communicating with the state, the responsibility for regularity is chiefly laid upon them, and irregularly laid taxes may in general, if set aside, be charged back to the counties for re-assessment in some form. But where taxes have been regularly assessed and returned, the responsibility of the counties is fulfilled, and they are discharged from further duties. No county has any means of compelling redress against township officers whose action is regular in form,— whether honestly or dishonestly performed; and the reason for imposing any duty on the counties is not based on the idea that they are able to regulate matters, but upon somewhat arbitrary rules of convenience to the state.

As each tax roll directs specifically what taxes are to be collected of each tax-payer for state, county, and local purposes, if all the persons charged were residents and possessed of tangible property, no great complications would be likely, and the moneys would be speedily collected and paid over at once where they belong. But our laws are framed on the theory that a considerable number of tax-payers will

not pay their taxes to the township collecting officer, and that both township and county, as well as state taxes, will have to be enforced by other agencies.

Assuming that all the taxes on every roll are presumptively of equal validity, the rule adopted has been to allow the town treasurer to retain the whole amount due to his office out of his collections before requiring him to pay any money to the county treasurer, and in like manner to allow the county treasurer to retain enough to pay all county taxes before paying over any money to the state. So that where town and county taxes are thus satisfied the whole balance belonged to the state and is enforced for the benefit of the state, although nominally including some county and township taxes in lieu of the same amount of state taxes collected and retained by township and county.

If the business has been regularly done, the taxes returned uncollected and the moneys paid over to the state at the proper return day, will precisely balance the amount of state taxes laid against the county. If enough has not been collected to pay township and county taxes, then by the return the state becomes a debtor to the county for the deficiency, but the unpaid taxes all belong to the state. And in pursuance of this same theory, although returned taxes for state, county, and town purposes are all charged with a high and uniform rate of interest, in the nature of a penalty for delay, only ten per cent. of this is allowed to the county for so much of the aggregate as is necessary to make good the county deficiency which the state is to assume, and all the rest belongs to the state. The county is charged with the state tax and credited with all moneys paid by its treasurer and all taxes returned unpaid. It has no further concern with, and no control over any of the unpaid taxes on its own account; and if any of them are subsequently paid to the county treasurer, they belong to the state and must be so accounted for.

There is but one case in which the county has any subsequent interest in the returned taxes. It is responsible to

36 MICH.—10.

the state for their regularity, and in case any tax is found to be illegal, and set aside by the proper state authority in the manner pointed out by law, so that the state does not receive its amount, then it is charged back to the county as so much previously credited without consideration, and the county is bound to make it good.

Every dollar of taxes returned unpaid in due course of law is a payment to the same extent of the debts due from the county to the state,—and the law has always required annual statements and balances of accounts to be struck on this basis. Every tax legally set aside is charged as a new item of indebtedness. But until 1869 no provision was made for charging back any other items connected with taxes. The balances carried over from year to year in accordance with law, could only be changed to the extent of these specific deductions for void taxes.

The tax sales have in all cases been regarded as interesting no one but the state. While usually made by the county treasurers, yet they made them under state authority, and unless they gave satisfactory bonds to the auditor general, the duties connected with the sales were performed by other persons employed by the auditor general for that purpose. No funds could be received for bids except such as were legally receivable at the state treasury.

No county or county officer ever had authority to bid at the sales or in any way to control them except on behalf of the state. No parcel could be sold to a private bidder for less than the whole taxes and charges, and lands not purchased by private parties were required to be bid in for the state.

Lands bid off by the state could be redeemed like other lands, and if not redeemed were open to sale at the annual tax sales; and if not sold after five years they were no longer assessable until sold or discharged from the taxes.

In all these proceedings the state purchased and held in the same manner as individuals, and a state tax-bid transferred to a private purchaser was in his hands in all respects.

like a title bid off by himself originally. The tax was extinguished by the sale, and the title was good or bad according to its regularity.

In 1869 a statute was passed for revising the tax law, which contained in section *124* a direction that lands remaining unsold for five years after they were bid off to the state should be sold for what they would bring, any excess over the amount charged against any parcel to " be placed to the credit of the county in which such parcel of land may be situated; and if any parcel of the land so offered shall be sold for less than the amount for which it was bid off to the state, then the proper county shall be charged with the difference between the sum for which such parcel was so sold and the amount for which it was originally bid off to the state."—*C. L. 1871,* § *1090.* This section was repealed without any saving clause in 1875.—*L. 1875, p. 270.*

It is claimed by relator that this section was retrospective, and the charges in controversy rest on that claim, which is disputed by respondents, who also insist on its invalidity if so construed.

The statute of which the section formed a part was an independent and entire law, entitled " An act to provide for a uniform assessment of property, and for the collection and return of taxes thereon." Any provision which would be of any use in carrying out taxation to its results in the complete disposal of property may, in a certain sense, be within such a title. But it would be going very far to hold that where taxes have been finally satisfied, and the property bid off on a tax-sale, a provision could be properly included which had no relation whatever to the collection of taxes, and only referred to the sale of a certain class of state taxlands which had been owned for many years, and were to be disposed of at any price which they would bring. As a matter of future policy, it might fairly be considered as a means of ultimate collection, by making the county a guarantor, not only of the validity of the taxes, but also of the

marketable value of the security.    But its purpose, if retro-spective, is different.

The law assumes that the tax-sales have been valid, and that the county has therefore levied all the taxes it was required to levy, and that these have been satisfied by pay-ment or sale.    It assumes further that the accounts have been adjusted on that theory, and that as to those taxes no debt exists against the county.    The legal effect of the sec-tion, if retrospective, is, that the state arbitrarily shifts off on the county its bad bargains in tax-lands, and compels the county,—not to take them at their cost,—but to make up the deficiency arising on a sale by the state itself, and over which it has no control.    And its result is to require those who have already paid their taxes to be taxed over again for the default of others, who may in turn have profited by their own default, in bidding in their lands for less than was levied against them.

It has already been held by this court that provisions in this same statute which made radical changes in the rights of parties should be treated as prospective.—*Clark v. Hall, 19 Mich., 356; Smith v. Auditor General, 20 Mich. R., 398.*    In both of those cases the title of the statute was regarded as evidently prospective.    In most of its features the statute does not seriously differ from the laws it dis-placed, and would create no disturbance in pending pro-ceedings.    But where any section gave ground for changes which entirely revolutionized the old system, in regard to the most important rights and liabilities under tax-sales, it could not be made applicable to proceedings which were no longer executory, without making its title very inappropriate, and bringing it within the mischiefs aimed at by the con-stitutional provision, which confines statutes to the purposes indicated by their titles.

Without considering the power of the legislature to enact such provisions retrospectively, we think this section is not to be given such effect.

In regard to taxes charged back because of injunctions,

there is nothing in any tax law which allows any taxes to be so charged back until they have been rejected or held invalid by some competent authority. If the injunctions were issued under circumstances which left authority in the auditor general to reject them for illegalities, and he actually rejected them for adequate causes, the fact that he did not wait for a decree would not be important. But no tax can lawfully be charged back until it has been set aside legally by some competent authority.

As to the interest charges complained of, we are unable on the record to discriminate the charges, so as to know on what basis they are made up. Most of them, we suppose, depend on the matters already disposed of. We cannot discuss them without further light.

As the accounts will all have to be re-cast, the *mandamus* must be denied.

The other Justices concurred.