## AUDITOR GENERAL *v.* BOLT.

TAXATION—ACCOUNTING BETWEEN STATE AND COUNTY—REJECTED TAXES—INTEREST AND CHARGES—MANDAMUS.

> Under the tax law of 1893, as under former laws, the auditor general is authorized to charge the several counties of the State with the amount of the State tax apportioned to them, respectively, against which should be credited the amount of State taxes collected and paid over, and the amount of State taxes returned as delinquent. Hence, where taxes are subsequently rejected by the auditor under section 95 of the act, the amount of the State tax so rejected becomes a charge against the county, payable at the next quarterly settlement, together with the expenses of sale and interest on such taxes and expenses, without waiting for the reassessment and collection of the tax; which payment, if refused, may be compelled by *mandamus.*

*Mandamus* by Roscoe D. Dix, auditor general, to compel George Bolt, treasurer of Muskegon county, to pay over a certain sum of money claimed to be due the State. Submitted May 1, 1900.   Writ granted May 15, 1900.

*Horace M. Oren*, Attorney General, for relator.

*Charles B. Cross*, Prosecuting Attorney, and *George S. Lovelace*, Assistant Prosecuting Attorney (*Sessions & Sutherland*, of counsel), for respondent.

HOOKER, J.   The auditor general asks a peremptory *mandamus* to compel the treasurer of Muskegon county to pay over to the State the sum of $3,312.82, claimed to be due the State as shown by the books of relator's department.   The claim grows out of some rejected taxes which have from time to time since 1885 been charged back to the county upon the auditor's books, and consists of:

| | | |
|---|---|---|
| Rejected taxes | $750 | 78 |
| Expenses | 2,095 | 27 |
| Interest on State tax and expenses | 493 | 44 |
| | $3,339 | 49 |
| Less a credit | 26 | 67 |
| Balance due State | $3,312 | 82 |

The respondent denies liability for the last two items, and claims that the first is not due.   As the charges all have their foundation in the first item, we may conveniently examine that first.   Under our tax law, a list of lands upon which taxes are not seasonably paid is returned to the auditor general by each county treasurer, with a statement of the taxes assessed upon such lands.   It is called the "delinquent list."   Upon receiving it, the auditor credits the county from which it comes with the aggregate of such taxes, against the State tax, which has already been charged against the county as apportioned. Among the lands returned delinquent there are usually some that should have been omitted from the list; *e. g.*, those upon which the tax has been paid, those which were

not subject to assessment, and those to which, through some error, the lien of the State for taxes has not attached. Such lands, when discovered by the auditor general, are stricken from the list and reported back to the county treasurer, whose duty it then becomes to submit the list to the board of supervisors, who are then required to reassess upon the lands such as are proper charges, and upon the property of the township such as are not proper charges upon the lands upon which they were previously assessed. These are called "rejected taxes," and the aggregate is charged against the proper county in its account by the auditor general. The relator claims that the county must make good this deficiency in the taxes apportioned to it at the next quarterly settlement; the respondent, that it is not obliged by law to do so, and that all the State can require is that the same shall be reassessed, and the money paid over as fast as collected.

The State is entitled to, and does, charge the county with the State tax. As fast as the State tax is collected, it should be paid in; and, when the time to make return of delinquent lists arrives, it is all due to the State, and is payable, upon a settlement of accounts rendered by the auditor general, which the law requires to be made quarterly. The delinquent tax returned is a credit to the county upon such account. We have, then, the county charged with the State tax as apportioned, and credited with its delinquent list, and such cash as it has collected and paid upon the State tax. If there is a balance due the State, as there may be from a failure to collect the full amount of the personal tax, the county must make it good, as we have held in the recent case of *City of Muskegon* v. *County of Muskegon*, 123 Mich. 272 (82 N. W. 131). It may happen, as we have seen, that some of the taxes in the delinquent list cannot be collected, for reasons already given. In such case there is a shrinkage in the county's credit, and a corresponding liability to make it good. See *Auditor General* v. *Supervisors of Monroe Co.*, 36 Mich. 73. It is charged back to the

county as so much previously credited without considera-
tion, and, even before the law of 1869, was considered a
valid charge against the county. The law of 1869 had
the effect of making the county a guarantor of the collec-
tion of taxes returned delinquent, with certain limitations,
and would have made rejected taxes a proper charge, had
they not already been. We see no reason why such items
are not upon the same footing as deficiencies arising from
a failure to collect a personal tax. If, as said by Mr.
Justice MOORE in the recent case (*City of Muskegon* v.
*County of Muskegon, supra*), the State has no means of
collecting the latter, neither has it the former. The
county has failed to produce the revenue apportioned to it,
and it must pay the deficiency, and make itself good
through reassessment in the manner pointed out by law.
This was the law before the counties were made guar-
antors of the collection of the delinquent taxes by the act
of 1869, as we have already said; and the repeal of that
feature of the law, or its change, if one has been made,
has not relieved counties of liabilities for void assessments
or deficiencies or mistakes in the delinquent lists.

It has been the policy for many years to require the
counties to carry the uncollected tax until it was paid; the
only relief afforded being the purchase by the State of
lands not bid upon, which took effect after expiration of
redemption. We do not find in the present law any clear
indication of an intention to relieve the counties from the
burden of carrying the uncollected tax, but, on the con-
trary, a disposition is shown to relieve the State, by
requiring State lands to be bid in for the State, county,
and township proportionately, instead of for the State, as
was the rule until 1882. See Act No. 206, Pub. Acts
1893, § 70. We think there should be something plainly
indicative of a legislative design to change the rule, before
we should decide that it is to be departed from. It is
urged that such intention should be deduced from an
omission of some provisions existing in the earlier laws,
and that we should infer it from the language of other

sections, which require the payment of "money collected;" it being argued that only "money collected" was provided for. We have already seen that section 87 requires settlement accompanied by payment of amounts collected and due, as shown by the accounts of the auditor general. If it be conceded that the county is entitled to credit for the delinquent lists until the land is sold, or, if bid in by the State, until after the time for redemption expires, it is manifest that it must then be prepared to adjust deficiencies, *with interest,* as provided in section 87; and, as the lands are always subject to redemption or purchase until the expiration of redemption, each quarterly settlement may contain such items, as the law plainly implies. See Act No. 206, Pub. Acts 1893, § 87; 1 Comp. Laws 1897, § 3910.

The remaining items consist of charges and expenses, and interest thereon, and the question resolves itself into this: Was it intended that the expenses of collecting the taxes due the State should be borne by the State at large, or by the county from which they were due? As shown by the account, the item for charges and expenses is several times as large as the original tax. The law contemplates that charges and expenses shall be imposed upon the land, where they can be; being always added to the tax before sale. These expenses are due to the mistakes of the county and township, as a rule, and it is just that they should bear them. Section 95 provides that rejected taxes shall be charged back. Nothing is said about charges, but neither is there about interest. We have seen that section 87 contemplates the computation of interest as one of the bases of adjustment. It is admitted that it has long been the custom of the department to include charges, and interest upon them. While it may be said that these charges ought not to be imposed upon the land in case of rejected taxes, and perhaps could not be lawfully, it is nevertheless true that the futility of the steps for which the charges are made is due to the failure of the local officers to properly perform their duties, and

the expense which would otherwise fall upon the land should be a charge upon the county, and not become a part of a subsequent State levy, to be imposed upon the State at large, thereby compelling persons in no way responsible for the loss to bear the greater part of the burden.

The writ will issue as prayed.

The other Justices concurred.