ROBERT B. BLAKEMORE, AS EXECUTOR, AND LAURA B. KEDNEY, AS EXECUTRIX, OF THE LAST WILL AND TESTAMENT OF LOUIS A. KEDNEY, DECEASED, AND ROBERT B. BLAKEMORE AND WILLIAM C. MACFADDEN, AS TRUSTEES UNDER SAID LAST WILL AND TESTAMENT, AND LAURA B. KEDNEY AND FRED S. KEDNEY, HARRY S. KEDNEY AND LOUIS S. KEDNEY, MINOR CHILDREN OF SAID LOUIS A. KEDNEY, DECEASED, BY LAURA B. KEDNEY, THEIR GENERAL GUARDIAN, v. JOHN COOPER AND GEORGE MCCAULEY ET AL.

Opinion filed December 18, 1905. Rehearing denied January 25, 1906.

**Jury Trial.**

1. The issues in this case are purely equitable, and the case was properly tried to the court without a jury under section 5630, Rev. Codes 1899.

**Tax Deed — Executors are "Assigns."**

2. Executors are the "assigns" of their testator within the meaning of section 110, c. 100, p. 271, Laws 1891, which authorizes the issuance of a tax deed to "the purchaser, his heirs or assigns."

**Constitutional Law — Legislature Cannot Impair Evidentiary Character of Tax Deed.**

3. The assurance held out by the state to purchasers at tax sales by the revenue laws of 1890, as amended in 1891, that the tax sale certificates and tax deeds issued to them would be prima facie evidence of the regularity of the tax proceedings, although relating to the remedy, constituted a substantial inducement to the purchase, entering into the contract with the state, and so materially affecting its value that it cannot be taken away by subsequent legislation without impairing its obligation. Fisher v. Betts, 12 N. D. 197, 96 N. W. 132, followed and approved.

**Redemption — Repeal of Statute Cannot Impair Accrued Right.**

4. The right to redeem from a tax sale made under chapter 132, p. 376, Laws 1890, was a "right accrued," and was perpetuated as it existed under that act, including the provisions for terminating and exercising the right by the saving provisions contained in section 2686, Rev. Codes 1895, notwithstanding the repeal of the 1890 revenue laws by the Revised Codes of 1895.

**Repeal of Revenue Laws — Prospective Operation Thereof.**

5. The general rule of construction applicable to repeals and revisions of revenue laws is that they are to have a prospective operation only, unless the intent of the legislature to the contrary clearly appears.

**Same — Redemption — Retroactive Operation of Statute.**

6. The provisions of the Revised -Codes of 1895, and of chapter 126, p. 256, Laws 1897, and of chapter 166, p. 221, Laws 1901, relating to redemption from tax sales, are prospective, and do not apply to certificates issued under former statutes.

**Same.**

7. The provisions of chapter 132, p. 376, Laws 1890, which required the service of notice in order to terminate the right of redemption is still in force as to sales made under that chapter, and deeds issued without such notice are void.

**Same — Notice of Sale — Sufficiency of Publication.**

8. A notice of tax sale published in a newspaper, legally designated and otherwise qualified to make such publication, is not illegal because of the failure of the owner or manager to file with the county auditor an affidavit setting forth its qualifications as required by section 2, c. 120, p. 346, Laws 1890.

**Same — Evidence — Description of Property.**

9. The evidence offered by defendants to prove that the notice of sale did not describe the property *held* insufficient.

Appeal from District Court, Cass county; *Pollock, J.*

Action by Robert B. Blakemore, as executor, and others, against John Cooper and another. Judgment for plaintiff, and defendants appeal.

Modified.

*J. E. Robinson,* for appellant.

A tax title is purely technical as distinguished from a meritorious one, and depends for its validity upon a strict compliance with all the provisions of the statute. Black on Tax Titles, section 409; Kern v. Clark, 59 Minn. 70, 60 N. W. 809; Bendixon v. Fenton, 31 N. W. 685; Haller v. Blaco, 10 Neb. 36, 4 N. W. 362; Salmer et al. v. Lathrop et al., 10 S. D. 216-225, 72 N. W. 573; Hiles v. Atlee et al., 90 Wis. 72, 62 N. W. 940; Cooley on Taxation (3d Ed.), 914, 915, 916; Farrington v. N. E. Investment Co. et al., 1 N. D. 102, 45 N. W. 191; Power v. Bowdle, 3 N. D. 107, 54 N. W. 404; Power v. Larabee, 2 N. D. 141, 49 N. W. 724; O'Neil v. Tyler, 3 N. D. 47, 53 N. W. 434; Swenson v. Greeland, 4 N. D. 532, 62 N. W. 603; Roberts v. First National Bank et al., 8 N. D. 504, 79 N. W. 1049; Lee v. Crawford, 10 N. D. 482, 88 N. W.

97; Security Imp. Co. et al. v. Cass County, 9 N. D. 553, 84 N. W. 477; Dever v. Cornwell et al., 10 N. D. 123, 86 N. W. 227.

The defendants were entitled to a trial by jury and the court erred in denying it. Section 5420, Rev. Codes 1899; Grandin et al. v. La Bar, 2 N. D. 206, 50 N. W. 151.

Sales are void, as notices of sale were not published in a legal newspaper. Galbraith v. Payne, 12 N. D. 164, 96 N. W. 258; Melchior v. McCarty, 31 Wis. 252, 254; Wyman v. Baker, 86 N. W. 432.

Also because they did not contain a list of the lands, amount of taxes and penalty due. Laws of 1890, section 68; Laws of 1891, section 273; Dever v. Cornwell, supra.

No legal redemption notices were served. They fail to describe the lands and to state the amount required to redeem. Rev. Laws 1890, section 78; Midland County v. Eby, 93 N. W. 707; White v. Smith, 25 N. W. 115.

When an estate is sold subject to redemption, the time to redeem can neither be lengthened nor shortened by subsequent legislation. Merrill v. Deering, 32 Minn. 479, 21 N. W. 721; Gaston v. Merriam et al., 33 Minn. 271, 22 N. W. 614; Nelson v. Central Land Co., 29 N. W. 121; Cooley on Taxation (3d Ed.), 1034; Moody v. Hoskins, 64 Miss. 468; Blackwell on Tax Titles, section 729.

Redemption and notice thereof are governed by the statute under which the sale was made. Fisher v. Betts et al., 12 N. D. 197, 96 N. W. 136; Kipp v. Johnson, 73 Minn. 34, 75 N. W. 736; Cole v. Lamm, 84 N. W. 329; Roessler v. Romer et al., 99 N. W. 800, 822; Darling v. Purcell, 100 N. W. 726.

Subsequent legislation may provide for redemption notice on prior tax sales if it does not necessarily extend the time to redeem. Curtis v. Whitney et al., 13 Wallace, 68, 80 U. S. 68, 20 L. Ed. 513; Coulter v. Stafford, 56 Fed. Rep. 564; Oullahan v. Sweeney, 79 Cal. 537, 21 Pac. 960; State v. Hundhausen, 24 Wis. 196; Curtis v. Morrow et al., 24 Wis. 664.

The tax deeds are not made to the purchaser, his heirs or assigns, and are void on their face and not prima facie evidence of title. Laws of 1891, page 271, section 7; Alexander v. Savage, 90 Ala. 383, 8 So. 93.

When a deed is only prima facie evidence, the purchaser takes it subject to the right to overcome this presumption by proof. The matter being open to investigation, the legislature may regulate it,

and shift the burden to the purchaser.  30 Fed. Rep. 587; Gage et al. v. Caraher, 17 N. E. 777, 779; Hickox v. Tallman, 38 Barb. 608; Strode v. Washer et al., 16 Pac. 926; Emeric et al. v. Elvarado, 27 Pac. 356, 368; Cooley on Taxation (2d Ed.) 297; Cooley on Con. Lim. (6th Ed.) 450, 451; Burbank v. Rumsey, 90 Ill. 555.

*Newman, Holt & Frame*, for respondent.

This cause was not triable by jury.  People, etc., v. Center et. al., 66 Cal. 465, 6 Pac.' 487; Reichelt et al. v. Perry et al., 91 N. W. 459; O'Neil v. Tyler, 3 N. D. 47, 53 N. W. 434; Polack v. Gurnee, 5 Pac. 229.

The plaintiffs as executor and executrix are the assigns of the deceased tax purchaser. Blakemore et al. v. Roberts, 12 N. D. 394, 96 N. W. 1029; Bouvier Law Dict. (Rawle's Revision) page 182; 4 Cyc. 288; Brown v. Crookston Agri. Ass'n., 26 N. W. 907; Williams on Executors, 559.

Repeal of a statute requiring notice of redemption does not impair the obligation of contract.  Black on Tax Title, 350; Robinson v. Howe, 13 Wis. 381, 342; Cooley on Taxation (1st Ed.), page 364; Merrill v. Sherburne, 1 N. H. 199, S. C. 8 Am. Dec. 52; Cooley on Con. Lim. (6th Ed.) 438; Butler v. Palmer, 1 Hill, 324; Smith · v. Packard et al., 12 Wis. 414; Baldwin v. Ely et al., 28 N. W. 392, 398; People v. Livingston, 6 Wend. 526.

A law is not retrospective unless such construction is essential to its effect, or its terms are so explicit as to preclude any other interpretation.  Gaston v. Merriam, 22 N. W. 619; Cooley on Taxation, supra; Roberts v. First National Bank, supra.

Proper notice of tax sale will be presumed.  Laws of 1890, ch. 132, section 72; Fisher v. Betts, supra.

YOUNG, J.  The plaintiff brought this action under chapter 5, page 9, Laws 1901, to determine adverse claims to the north 50 feet of lot 6, in block 37, Keeney & Devitt's second addition to the city of Fargo.  The plaintiff's interest therein was acquired through purchase at three separate tax sales, to wit, the sales for the 1890, 1892, and 1893 taxes, and upon which tax deeds were issued in 1902.  The sales were made to Louis A. Kedney, and tax sale certificates issued to him.  The deeds were issued to "Robert B. Blakemore, executor, and Laura B. Kedney, executrix."  The complaint alleges that Louis A. Kedney died in 1898; that in his

last will and testament he named Robert B. Blakemore as executor, and his widow, Laura B. Kedney, executrix; that the persons so named duly qualified and have not been discharged; that the said Louis A. Kedney devised his entire estate, real, personal and mixed to Robert B. Blakemore and William C. Macfadden in trust for the use and benefit of his wife, Laura B. Kedney, during her widowhood, the remainder to his children per stirpes when they shall have attained the age of 22 years; that Laura B. Kedney was duly appointed guardian of the persons and of the estate of the three children, who are all minors. All of the persons above named are joined as plaintiffs, and allege that they have "an estate and interest in and incumbrance upon" the property above described, and that the defendant claim "certain interests in or estates in or liens or incumbrances upon said premises adverse to these plaintiffs." The prayer is in the statutory form, except that neither possession nor compensation for the use are asked for. The defendants, John Cooper and George McCauley, answered jointly, and expressly deny that the plaintiffs have any right, title or interest in or lien upon the land in question, and allege that in May, 1903, McCauley was the owner in fee of said land and under a patent from the United States government, that he conveyed the same to his codefendant Cooper, and that the latter is now the owner in fee simple and in possession. When the case was called for trial counsel for defendants demanded a trial by jury, stating that the action is in effect an action in ejectment. The request was denied and the case was tried under section 5630, Rev. Codes 1899. The findings of the trial judge were in all respects favorable to the plaintiff, and judgment was entered thereon quieting and confirming plaintiff's title, and adjudging that the adverse claims of the defendants are null and void and enjoining them from further asserting them, and for costs. Defendants have appealed from the judgment, and demand a review of the entire case in this court under the above section.

The preliminary question urged by counsel for defendants in his brief, that the defendants were entitled to a trial by jury, does not merit or require discussion. This contention is inconsistent with their attitude upon the record which they have prepared and presented to this court. They have demanded a trial anew under section 5630, Rev. Codes 1899. This section does not authorize retrials in jury cases. In demanding a retrial they necessarily as-

sume that the action is not properly triable to a jury. It is entirely clear, however, that the relief sought in this case is purely equitable and that the case was properly tried under section 5630, supra. The plaintiffs rested their case upon the tax sale certificates and tax deeds. It is urged by counsel for the defendants that the deeds are void because they are issued to "Robert B. Blakemore, executor, and Laura B. Kedney, executrix," instead of Blakemore and Macfadden, who are named in the will as devisees in trust for the benefit of the widow and children. This contention cannot be sustained. Section 110, Laws 1890, as amended by chapter 100, page 266, Laws 1891, in addition to providing a form of deed, authorized the issuance of the same to "the purchaser, his heirs or assigns." We are of the opinion that the executor and executrix are the assigns of the testator within the meaning of the above section. An assign or assignee is "one to whom an assignment has been made. Assignees are either assignees in fact or assignees in law. An assignee in fact is one to whom an assignment has been made in fact by the party having the right. An assignee in law is one in whom the law vests the right, as an executor or administrator." Bouvier's Law Dictionary, "Assignee." "An executor may be deemed an assignee, in law, of the testator. Dyer, 5. That is, he takes without any oppointment of the person, but by operation of law. The testator names the individual as executor, but it is the law makes him the assignee of the property." Hight v. Sackett, 34 N. Y. 451. The word "assignee" is applied most frequently to assignees in fact, but it is also applied to assignees in law, and we are of opinion that it must be considered as used in its most comprehensive sense in the above statute, including, as applied to this case, the executor and executrix. Blakemore v. Roberts, 12 N. D. 394, 96 N. W .1031; Douglas v. Hennessy, 15 R. I. 272, 3 Atl. 213; Brown v. Crookston Agl. Co. (Minn.) 26 N. W. 907.

It is also contended that the introduction of the certificates and deeds did not make out a prima facie case. This contention is likewise untenable. It is true that "in the absence of an enabling statute, it is incumbent upon any person who claims title to land derived from a sale thereof for taxes to prove affirmatively and by proper evidence that every mandatory provision of the law under which the sale was effected was strictly complied with; that each step in the proceedings from the assessment of the taxes to the execution of the deed was formally and regularly taken by

the officers or persons thereto legally authorized, and that he or his grantor was the purchaser at the sale. And this obligation is not met, in the absence of an enabling statute, by the mere production of the tax deed. The deed of conveyance would not stand for this evidence. It would prove its own execution, nothing more." Black on Tax Titles, sections 443, 444; 2 Cooley on Taxation (3d Ed.) 1004. The common-law rule of proof was abrogated by the statute under which the sales in question were made. The several sales were made in 1891, 1893 and 1894, under chapter 132, page 376, Laws 1890, as amended by chapter 100, page 266, Laws 1891. Section 71 of the 1890 act prescribed a form of certificate to be delivered to the purchaser, and section 72 of that act provided that "such certificate shall in all cases be prima facie evidence that all the requirements of the law in respect to the sale have been duly complied with and that the grantee named therein is entitled to a deed therefor after the time for redemption has expired." The 1890 revenue law made no provision for the issuance of a tax deed. The amendatory act (chapter 100, page 266, Laws 1891) cured this defect, and, among other things, provided for the issuance of deeds, "which shall vest in the grantee an absolute estate in fee simple * * * which shall be conclusive evidence of the truth of all the facts therein recited, and prima facie evidence of the regularity of the proceedings from the valuation of the land by the assessor up to the execution of the deed." All of the sales were made under the statute as amended.

The deeds, however, were not issued until 1902. The revenue law under which the sales were made was expressly repealed in 1895, and it is contended that the assurances made to purchasers by the former statute as to the evidential force of certificates and deeds, is, therefore, not available. This contention was urged in Fisher v. Betts, 12 N. D. 197, 207, 96 N. W. 132, and was overruled. It was contended in that case that because of the repeal of the revenue laws of 1890 and 1891 in 1895, a tax deed issued thereafter had no force as evidence that the tax proceedings were regular, and that the regularity of all acts of all of the taxing officers must be affirmatively established. It was claimed that the repeal in this respect related solely to the remedy, and that the legislature has a right to change existing remedies. We denied that the repeal had the effect contended for, in the following language: "The contention would not be disputed if the change referred to

the remedy only, but if the change of remedy or change in the rule's of evidence goes further in its results, and affects contract rights, such changes are inhibited. The legislature will not be permitted, under the guise of changing a remedy or a rule of evidence, to impair a vested right under an existing contract; and the presumption that all requirements of law with respect to the sale have been complied with, raised by the delivery of the tax certificate, was raised in favor of the tax purchaser by the law in force at the time of his purchase. This presumption was perpetuated by the deed, was a vested matter of right, and could not be taken away by a repeal of these laws. Cooley on Const. Lim. 347. Speaking of section 1639 of the Compiled Laws of 1887, which was practically the same as the section under consideration, this court said, in Roberts v. Bank, 8 N. D. 504, 79 N. W. 1049: 'This statute entered into the contract of purchase, and became a part thereof.' "

Counsel for defendants vigorously challenges the soundness of the above decision, contending that the statute stated a mere rule of evidence, relating to the remedy, and that remedies are always under legislative control. It has been held in a number of cases that "rules of evidence are at all times subject to modification and control by the legislature, and changes thus made may be made applicable to existing causes of action," and that the repeal of a statute under which purchasers at tax sales have been made effectually deprives the purchaser of the assurances contained in it as to the evidential effect of the deed. The following cases so hold: Hickox v. Tallman (N. Y.) 38 Barb. 608; Howard v. Moot, 64 N. Y. 262; Roby v. City of Chicago, 64 Ill. 447; Gage v. Caraher (Ill.) 17 N. E. 777; Gibbs v. Gale, 7 Md. 76; Strode v. Washer (Or.) 16 Pac. 926; Marx v. Hanthorn (C. C.) 30 Fed. 579, 587. We have no quarrel with the rule, and it is a general rule, that the legislature may control remedies, but the rule is subject to the exception, which is as firmly fixed as the rule itself, that the legislature cannot, by a repeal or change of remedies, impair the obligation of a contract. The protection against the impairment of the obligation is absolute, and all legislative acts which work that result, whether by directly changing its terms or indirectly by rendering it ineffective, and of less value through a change of remedies, are prohibited. This is well stated in 2 Story on the Constitution (5th Ed.) section 1385: "It is perfectly clear that any law which enlarges, abridges, or in any manner changes the intention of the

parties, resulting from the stipulations in the contract, necessarily impair it. The manner or degree in which this change is effected can in no respect influence the conclusion, for whether the law affect the validity, the construction, the duration, the discharge or the evidence of the contract, it impairs its obligation, though it may not do so to the same extent in all supposed cases."

The views of the Supreme Court of the United States upon this question are clearly set forth in the language of Mr. Justice Swayne, in Edwards v. Kearzey, 96 U. S. 595, 24 L. Ed. 793: "The constitution of the United States declares that: 'No state shall pass any    *    *    *    law impairing the obligation of contracts.' A contract is the agreement of minds, upon a sufficient consideration, that something specified shall be done, or shall not be done. The lexical definition of 'impair' is 'to make worse; to diminish in quantity, value, excellence or strength; to lessen in power; to weaken; to enfeeble; to deteriorate.' Webster, Dic. 'Obligation' is defined to be 'the act of obliging or binding; that which obligates; the binding power of a vow, promise, oath, or contract,' etc. Webster, Dic.    *    *    *    The obligation of a contract includes everything within its obligatory scope. Among these elements nothing is more important than the means of enforcement. This is the breath of its vital existence. Without it, the contract, as such, in the view of the law, ceases to be, and falls into the class of those 'imperfect obligations,' as they are termed, which depend for their fulfillment upon the will and conscience of those upon whom they rest. The ideas of right and remedy are inseparable. 'Want of right and want of remedy are the same thing.'    *    *    * It is also the settled doctrine of this court that the laws which subsist at the time and place of making a contract enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. This rule embraces alike those which affect its validity, construction, discharge and enforcement. Van Hoffman v. Quincy, 4 Wall. 535, 18 L. Ed. 403; McCracken v. Hayward, 2 How. 608, 11 L. Ed. 397. In Green v. Biddle, 8 Wheat. 1, 5 L. Ed. 547, this court said, touching the point under consideration: 'It is no answer that the acts of Kentucky now in question are regulations of the remedy, and not of the right to the lands. If these acts so change the nature and extent of existing remedies as materially to impair the rights and interests of the owner, they are just as much a violation of the compact as if they overturned his rights

and interests.' 'One of the tests that a contract has been impaired is that its value has by legislation been diminished. It is not by the Constitution to be impaired at all. This is not a question of degree, or manner, or cause, but of encroaching in any respect on its obligation—dispensing with any part of its force.' Planters' Bank of Mississippi v. Sharp, 6 How. 301, 12 L. Ed. 447. It is to be understood that the encroachment thus denounced must be material. If it be not material, it will be regarded as of no account. These rules are axioms in the jurisprudence of this court. We think they rest upon a solid foundation.     *     *     * The remedy subsisting in a state when and where a contract is made and is to be performed is a part of its obligation, and any subsequent law of the state which so affects that remedy as substantially to impair and lessen the value of the contract is forbidden by the constitution, and is, therefore, void."

Again, in United States v. Quincy, 71 U. S. 535, 18 L. Ed. 408, Mr. Justice Swayne, speaking for the court, said: "It is also settled that the laws which subsist at the time and place of the making of a contract,     *     *     *     enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. This principle embraces alike those which affect its validity, construction, discharge and enforcement.     *     *     * It is competent for the states to change the form of remedy, or to modify it otherwise as they may see fit, provided no substantial right secured by the contract is thereby impaired. No attempt has been made to fix definitely the line between alterations of the remedy, which are to be deemed legitimate, and those which, under the form of modifying the remedy, impair substantial rights. Every case must be determined upon its own circumstances. Whenever the result last mentioned is produced, the act is within the prohibition of the constitution, and to that extent void."

The question then is, not whether the repeal related to the remedy, but whether it impaired the obligation of the purchaser's contract with the state, by making it less effective and less valuable. In Fisher v. Betts, supra, we hold that it did, and we are still of the same opinion. The state was one of the contracting parties. It promised to those who would purchase the lands of tax debtors at its sales that it would give to them deeds which would be prima facie evidence of their title. Under this assurance the purchasers parted with their money. If the proceedings were in

fact regular, the prima facie effect of the deed was an unassailable assurance of title in the grantee and his successors forever. But if the purchaser be deprived of this assurance the deed evidences nothing. Neither he nor his successors are in that event protected by the fact that the proceedings were regular. They must be prepared to furnish (sometimes an impossible thing) the actual evidence of regularity whenever their title is challenged. That this change goes to the very life and value of the contract is, we think, apparent; and we cannot believe either that the legislature intended that its promises should be meaningless, or that purchasers did not in fact rely upon it as a strong, if not controlling, inducement to part with their money.

The necessity which gave rise to statutes like this is well stated in Black on Tax Titles, at section 448, in the following language: "The application of the common-law rule, casting the burden of proving every step upon the claimant under a tax title, was found to operate very much to the disadvantage of purchasers at tax sales. Aside from the difficulty of the undertaking—to prove every item in a long and technical course of proceedings—it was an arduous task to collect and preserve all the necessary fragments of evidence. Many of these were of a perishable nature, subsisting only in the files of newspapers, or fugitive documents; and the lapse of a considerable number of years, from the time of the first assessment, frequently put it beyond the power of the purchaser to fortify his claim with the evidence that was required of him. This fact, taken in conjunction with the strict and minute compliance with the statutory directions that was demanded of all the officers concerned, and with the extreme probability that some flaw, some slight omission or irregularity, could be detected in the proceedings, tended to make tax sales entirely nugatory. It became proverbial that a tax title was no title at all. And, indeed, transactions of this character came as near being an outright mockery as was possible for anything having the sanction of the law."

In our opinion the statute in question entered into, and was a substantial part of, contracts of purchase. It was framed to be relied upon by purchasers. To permit the state to repeal it would be to impair its obligation to the purchaser. This it cannot do. In our opinion it is within the mischief which the constitution was intended to prohibit. We must decline, therefore, to follow those courts which have sustained such repeals upon the ground

that the change effected was merely a rule of evidence. It follows from what has been said that the burden was upon the defendants to overcome the prima facie case made by the introduction of the tax sale certificates and tax deeds. Have they sustained that burden? We are of opinion that they have as to the tax deeds, but not as to the tax certificates.

The invalidity of the deeds is established by proof that no sufficient notice of the expiration of the redemption period was given. The property in question is the "north 50 feet of Lot 6, in Block 37, in Keeney & Devitt's Second Addition to Fargo." One of the notices described it as "Lot 6, Block 37, Keeney & Devitt's Second Addition to Fargo" (failing to describe the part of the lot). Another described it as the "north 50 feet of Lot 6, Block 37, Keeney & Devitt's Addition to Fargo" (instead of "Second Addition to Fargo"). The third notice did not describe the part of the lot or correctly describe the addition in which the property is situated. The notices were clearly insufficient because of their failure to correctly describe the property. The three notices referred to are set out in full in the abstract which is presented as a basis for our decision. True, they are notices which were personally served upon the defendant. They are, however, notices prepared under the hand and seal of the county auditor, and we cannot disregard them and assume, for the purpose of sustaining the tax deeds, that the county auditor prepared and served, either personally or by publication, other notices which were sufficient.

Counsel for plaintiff contend finally that no notice was necessary, and that the validity of the deeds is therefore not affected by the insufficiency of the notices. This presents a question of some difficulty. The sales were made under chapter 132, page 376, Laws 1890. All sales under that act were subject to redemption. The purchaser's lien could ripen into title only after service of notice of the expiration of the redemption period, and the owner's title could not be divested or his right of redemption terminated until the statutory notice was given. The purchaser could, by a timely service of the notice, limit the right of redemption to three years. By failing to serve it the period was extended and the right preserved until sixty days after such notice was given. Chapter 132, page 376, Laws 1890, was expressly repealed by section 12 of repeals, Rev. Codes 1895, which took effect on January 1, 1896. Section 1264 of the revenue laws contained in the Revised Codes

of 1895 fixed the redemption period at two years from the date of sale, and did not require notice of expiration. Two of the sales in question were made more than two years before the 1895 Code took effect. If the repeal was effective in terminating the purchaser's obligation to give notice, and the landowner's right to notice under the 1890 law and the provisions of the Revised Codes fixing the redemption period at two years are applicable to these certificates, it is clear that the purchaser became entitled to a deed upon two of the certificates upon demand and without redemption notice when the Revised Codes took effect, for in each case more than two years had elapsed since the date of sale; and as to the third certificate, the right of redemption expired on December 4, 1896, and without notice. Plaintiff's counsel contend that the repeal had this effect. We are unable to agree with this contention. It is true, chapter 132, page 376, Laws 1890, was expressly repealed. But it does not follow that all the provisions of the repealed act were abrogated as to rights which had accrued under them. As to a purchaser at a tax sale, it is well settled that the statute in force at the time of the sale becomes a part of his contract, and it is beyond the power of the legislature to sweep it away to his disadvantage by subsequent legislation. Roberts v. Bank, 8 N. D. 504, 79 N. W. 1049; Fisher v. Betts, 12 N. D. 198, 96 N. W. 132. In Minnesota it has been held, and apparently for the same reason, that the redemptioner's rights are also governed by the statute under which the sale was made. In Merrill v. Dearing, 32 Minn. 479, 21 N. W. 721, that court said: "The right of property acquired by the purchaser at this sale, and the right of redemption remaining to the owner, must both be governed by the law in force at the time of sale. Neither, in our judgment, could be abridged or enlarged by subsequent legislation. This is unquestionably so as to the rights of the purchaser. The same rule ought to apply in favor of the owner as against any statute shortening the time to redeem, and it is equally unjust to legislate against the owner of the land as in his favor. State v. McDonald, 26 Minn. 145, 1 N. W. 832; Hillibert v. Porter, 28 Minn. 496, 11 N. W. 84; Fleming v. Roverud, 30 Minn. 273, 15 N. W. 119; State v. Foley, 30 Minn. 350, 15 N. W. 375; Cooley on Taxation, 350." See, also, Gaston v. Merriam, 33 Minn. 271, 281, 22 N. W. 614; Kipp v. Johnson, 73 Minn. 34, 75 N. W. 736.

Other courts point out that the tax debtor has no contract with the state for any definite period in which to redeem; that the state has the power to sell his land without any right of redemption, and that the right to redeem and the time for exercising it are accorded as a matter of grace and not of right, and conclude, for these reasons, that the legislature has the power to reduce the redemption period and to otherwise modify the right in substantial particulars by subsequent legislation. Negus v. Yancey, 22 Iowa, 57; Muirhead v. Sands (Mich.) 69 N. W. 826; Baldwin v. Ely, 66 Wis. 171, 28 N. W. 392; Black on Tax Titles, section 353; 25 Am. & Eng. Enc. of Law, 410; Robinson v. Home, 13 Wis. 341, 342.

We do not find it necessary to express an opinion upon these conflicting views at this time, for we are of opinion that the legislature, in enacting the Revised Codes of 1895, saved the right of redemption as it existed under chapter 132, page 376, Laws 1890. The effect of the repeal by the Code of 1895 must be considered in connection with the general saving provisions contained in section 2686 of that Code, which read as follows: "No action or proceeding commenced before this Code takes effect, and no right accrued, is affected by its provisions, but the proceedings therein must conform to the requirements of this Code so far as they are applicable." This section preserves "actions" which had been commenced; "proceedings" which had been commenced; and "rights" which had accrued when the Revised Codes of 1895 took effect. The proceedings were thereafter required to conform to the provisions of the 1895 Code "so far as its provisions are applicable." We are agreed that the right of redemption, as it existed under chapter 132, page 376, Laws 1890, was a "right accrued," and was preserved by the above section. The saving provisions contained in this section, while general in terms, are such as usually accompany a revision of revenue laws. 1 Cooley on Taxation (3d Ed.) 499, 500, 501, and cases cited. And they are generally held to perpetuate pre-existing laws so far as they are necessary to protect and enforce the right of the tax debtor as well as the purchaser. For cases in point, see Fletcher v. Post, 104 Mich. 424, 62 N. W. 574; Matter of Munn, 165 N. Y. 149, 59 N. E. 881; also Greensboro v. McAdoo, 112 N. C. 359, 369, 17 S. E. 178; City v. Cronley, 122 N. C. 388, 30 S. E. 9; Puget Sound Bank v. County (C. C.) 62 Fed. 546; City v. Morris (Ind. App.) 58 N. E. 510.

In the recent case of Hagler v. Kelly, 13 N. D. 218, 13 N. W. 629, my associates were of opinion that the lien of a tax judgment

in favor of the state was a "right accrued," and was preserved by the above section, notwithstanding the repeal of the statute which created it. I expressed no opinion upon the point. My doubt rested upon the belief that the lien was a remedy, and not a right As to the present case there can be no doubt, and I fully agree with my associates that the right of redemption as it existed under chapter 132, page 376, Laws 1890, was a "right accrued," and was perpetuated through the saving clause, notwithstanding the repeal. It is equally clear that the provisions of the 1890 law, regulating the termination of the right of redemption by the purchaser—i. e., by notice of expiration, and the manner of effecting redemption by the tax debtor—were also continued in force, and govern in this action, unless they have been superseded by other subsequent provisions which are applicable. This is true under the language of the saving clause and also under the general rule of construction applicable to a revision or repeal of revenue laws, which is that the repeal or revision is to have a prospective operation only unless the intent of the legislature to the contrary clearly appears. Smith v. Humphrey, 20 Mich, 398; Clark v. Hall, 19 Mich. 356; Auditor General v. Supervisors, 36 Mich. 70; Thomas v. Collins, 58 Mich. 64, 24 N. W. 553; Hall v. Perry, 72 Mich, 202, 40 N. W. 324; City v. Whipple, 44 Cal. 303; Smith v. Kelly, 24 Or. 464, 33 Pac. 642; 1 Cooley on Taxation (3d Ed.) 2681, and cases cited.

This rule of construction is expressly made applicable to the Revised Codes of 1895. Section 2681 of that Code reads as follows: "No part of this Code is retroactive unless expressly so declared." There is nothing in section 1264 of that 1895 Code which will authorize us to hold that it relates to redemptions under former sales. It clearly relates to redemptions from sales made under the 1895 revenue law, of which it is a part. The same rule of construction also requires us to hold that section 106, chapter 126, page 295, Laws 1897 (section 1289, Rev. Codes 1899), and chapter 166, page 221, Laws 1901, are prospective, and do not apply to certificates issued under previous statutes. The statutes in force when the sales here in question were made, relating to redemption, required notice of expiration as a condition to obtaining a deed. No such notice has been given. The deeds are therefore invalid.

The defendants also attack the validity of the tax sales: First, upon the ground that the owner or manager of the newspaper in which the notices were published failed to file the affidavit with

the county auditor, required by chapter 120, page 346, Laws 1890; second, because of the alleged insufficiency of the notices published. Neither of these contentions can be sustained. Chapter 120, page 346, Laws 1890, consists of three sections. The first prescribes the qualifications of a newspaper which may do public printing and publish legal notices. Section 2 makes it the duty of the "owner or manager" of a newspaper, before it can be awarded a contract, to file with the county auditor a statement setting forth its qualifications. Section 3 subjects the person or corporation publishing notices or doing printing without filing such statement to a fine of not less than twenty-five nor more than one hundred dollars, and also a "forfeiture of all pay for any such printing, * * *" It is not claimed that the newspaper was not in all respects qualified under section 1 of this act. The only objection is that the owner did not make a sufficient affidavit. It is apparent that this failure did not invalidate the publication. Section 3 designates the consequences for such failure, namely, a fine and forfeiture visited upon the person or corporation owning the newspaper which is at fault, and names no other consequences. We find no warrant for holding that the legislature intended to declare notices void which are published in a newspaper which is qualified in fact, because the owner or manager fails to file the affidavit. On the contrary, we think the effect of such failure is that prescribed by section 3, to wit, liability to fine and forfeiture, and nothing more.

It is also claimed that the notices of sale did not contain a sufficient description of the property, and were therefore void. No proof of any kind was offered as to the notice of sale for 1894, and as to the other years the evidence does not show that the notices were insufficient. The notices of sale for the years 1891 and 1892 were published in the Fargo Republican. Defendants' counsel took the stand in their behalf and offered in evidence, over objection, two printed slips of paper, which he testified were cut from newspapers in his possession purporting to have been published on November 1, 1891, and November 1, 1893, respectively. These clippings contain only a small part of the tax sale notices. The descriptions are not as intelligible as they would be if the entire notice had been offered in evidence, and it is very doubtful whether a sufficient foundation was laid for the introduction of this evidence; a question we need not decide, for we are agreed that the description contained in each of the papers offered is sufficient. In each,

underneath the headlines: "Name, description, lot, block," the following appears: "G. W. McCauley, N. 50 ft. 6—37," and on each the foregoing description follows the general heading, printed in large letters: "Keeney & Devitt's Second Addition to Fargo." The objection is based upon the fact that between the general heading and the rest of the description of the property in question, i. e., the name, lot and block, certain other headings appear; on one: "Magill's Subdivision of Lot 1 and 2, Block 33;" on the other; "Bond's Subdivision of lots 6 and 7, Block 30." A casual inspection shows that these notices do not contain a misdescription or a misleading description. The heading just described do not include "Block 37 of Keeney & Devitt's Second Addition to the City of Fargo," in which the lot in question is situated. On the contrary, they cover the other blocks in this addition, which are designated by number, expressly excluding block 37. Apparently some of the blocks in this addition have been subdivided and appropriate subheads were inserted designating those which were subdivided. Upon their face, the subheads do not apply to the property in question, the description of which, concededly otherwise sufficient, appears under the heading "Keeney & Devitt's Second Addition to Fargo."

It follows that the attack upon the sales must fail, and the certificates must be held valid. The district court is directed to modify its judgment to correspond with the conclusions herein set out. Appellants will recover their costs on this appeal. All concur.